[No. H004303. Sixth Dist. June 7, 1988.]

DONALD SANDY, Petitioner, v.
THE SUPERIOR COURT OF SANTA CLARA COUNTY,
Respondent;
DAON CORPORATION et al., Real Parties in Interest.

**COUNSEL**

Frederic L. Schaefer, John R. Hetland, Charles A. Hansen, Thiele R. Dunaway and Hetland & Hansen for Petitioner.

No appearance for Respondent.

Elliot L. Bien, Kathryn N. Richter, Bronson, Bronson & McKinnon, Patrick H. Fabian and Terence E. Helmick for Real Parties in Interest.

## OPINION

**AGLIANO, P. J.**—This petition for mandate pursuant to Code of Civil Procedure[1] section 437c, subdivision (*l*), correctly contends that the trial court should have granted Sandy's summary judgment motion for two reasons: the 10-year statute of limitations, section 337.15, bars the action; and Sandy is not liable to Daon for contribution.

Sandy is an architect. He rendered services on the apartment project in question, Parkside Place, at latest in October 1970. Notice of completion on the construction of the project issued on April 30, 1971. The apartments were rented to members of the public. Daon Corporation bought Parkside on July 11, 1979, with the purpose of converting the project to condominiums. Daon renamed the project Woodsborough Condominiums (Woodsborough) and undertook massive renovation and reconstruction from September 1979 to April 1981. As the units were sold, the homeowners' association, Woodsborough Homes Association (Association) was created.

Daon has never had any relation or contact with Sandy.

On October 6, 1983, Association sued Daon for damages from construction defects in the condominiums. The action was dormant until January 16, 1987. On June 10, 1987, Daon filed a cross-complaint for express and implied contractual indemnity, equitable indemnity, and comparative indemnity. There are 40 cross-defendants, including the subcontractors with whom Daon contracted for the renovation of Parkside, as well as many individuals and entities who were only involved in the original construction of Parkside in 1969-1971. The latter group includes Sandy; Parkside Place Company (Parkside), the original owner, developer and builder; and Klingbeil Company (Klingbeil), a general partner of Parkside. Sandy, and his professional company, Sandy & Babcock, Inc., provided professional services to Klingbeil.

The cross-complaint contains no particularized claim of wrongdoing against Sandy, but instead generally alleges claims for equitable and comparative indemnity. ("DAON contends that, if it is found to be liable, [to] plaintiff as a result of any negligent or defective design, repair, maintenance, or construction of the Project, any such liability will be the direct and proximate result of the acts, omissions, representations, products and/or negligence of cross-defendants, . . . ")

Other defendants, such as Klingbeil, have also cross-complained against Sandy.

---

[1] All further references are to the Code of Civil Procedure unless otherwise indicated.

Sandy sought summary judgment against Daon's cross-complaint and against all other cross-complaints filed or deemed filed against him, on these undisputed facts: he provided design services for the project from July 1969 to October 1970; the City of Santa Clara issued occupancy certificates for the complex in 1970 and 1971; Daon bought the complex in 1979 and began renovation at that time; and the cross-complaint against Sandy was filed June 10, 1987. Both the Daon cross-complaint and the plaintiffs' complaint were filed more than 10 years after completion of Sandy's work on the project.

Daon opposed summary judgment on the theory that since it was timely sued for construction defects in the project, it could then cross-complain for indemnity against Sandy for his work. Cross-defendants Klingbeil, Preston and Associates, Inc., MacPreston, and the Klingbeil Management Company opposed the summary judgment on the ground that if they were timely sued (as cross-defendants, by Daon) then they are entitled to indemnity against Sandy. Courtney Borreco, another cross-defendant, objected on the ground the summary judgment motion appeared to be brought only against Daon. Klingbeil joins in this argument in its opposition to the writ petition.

The trial court denied the summary judgment motion, citing the decisions in *Valley Circle Estates* v. *VTN Consolidated, Inc.* (1983) 33 Cal.3d 604 [189 Cal.Rptr. 871, 659 P.2d 1160] (*Valley Circle*), and *Tech-Bilt, Inc.* v. *Woodward-Clyde & Associates* (1985) 38 Cal.3d 488 [213 Cal.Rptr. 256, 698 P.2d 159] (*Tech-Bilt*). The court also stated a triable issue of fact existed as to Sandy's alleged undisputed fact that other than the Daon cross-complaint, neither Sandy nor his company has been served with a summons and complaint. Sandy seeks a peremptory writ of mandate compelling grant of summary judgment.

DISCUSSION

1. *Procedural Issue*

It is not clear what triable issue of fact the court below perceived regarding service of a cross-complaint on Sandy. Some confusion resulted below because the caption of Sandy's summary judgment motion stated the motion was directed at Daon's cross-complaint, but on page 2 of the notice of the motion Sandy stated that he moved for summary judgment against Daon and "all other cross-complaints filed or deemed filed pursuant to Special Master's Pre-Trial Order No. 1." The order referred to was intended to schedule law and motion and discovery matters in the action and in relevant part provided that "[i]t shall be deemed: . . . [¶] . . . All defendants and cross-defendants have filed Cross-Complaints for implied equitable

indemnity and for a determination of comparative negligence against all other defendants and cross-defendants; . . ."

■ Any ambiguities arising from this set of facts generate questions of law rather than triable issues of fact, in our opinion, since the question is whether Sandy's motion as a matter of law was directed at all cross-defendants or only at Daon. Similarly, the issue of the effect of the special master's order is a question of law. Accordingly, denial of summary judgment on this ground was improper.

We conclude that any ambiguities were resolved when the cross-defendants appeared and answered Sandy's motion. All had an opportunity to be heard. The issue is the same on all claims for indemnity against Sandy, namely, whether the 10-year statute of limitations bars the claims. Accordingly we regard the motion as properly directed at all cross-complainants, and adequately noticed as such.

2. *Statute of Limitations*

Section 337.15, the 10-year statute of limitations for latent defects, in relevant part provides: "(a)No action may be brought to recover damages from any person ... who ... performs or furnishes the design, specifications, surveying, planning, supervision,testing, or observation of construction or construction of an improvement to real property more than 10 years after the substantial completion of the development or improvement for any of the following: [¶] (1) Any latent deficiency in the design, specification, surveying, planning, supervision, or observation of construction or construction of an improvement to, or survey of, real property... [¶] (c) As used in this section, 'action' includes an action for indemnity brought against a person arising out of that person's performance or furnishing of services or materials referred to in this section, except that a cross-complaint for indemnity may be filed pursuant to subdivision (b) of section 428.10 in an action which has been brought within the time period set forth in subdivision (a) of this section." The statute goes on to provide that substantial completion occurs upon the latest date of final inspection, recordation of notice of completion, date of occupation, or one year after cessation of work. (§ 337.15, subd. (g).)

A cross-complaint under section 428.10, subdivision (b) (to which the statute refers, in subdivision (c), above) is a transactionally related cross-complaint.

■ According to Daon's argument, which the trial court accepted, this statute of limitations permits the instant cross-complaint for indemnity to

be filed more than 10 years after the project is substantially completed, provided that the cross-complainant, Daon here, is itself timely sued within 10 years of the acts which allegedly render it liable. The court believed this result was dictated by the decisions in *Valley Circle, supra,* 33 Cal.3d 604 and *Tech-Bilt, supra,* 38 Cal.3d 488.

*Valley Circle* resolves the following issue: "Does ... section 337.15 permit a general contractor tort defendant to file a cross-complaint for equitable indemnity against a subcontractor who cannot otherwise be reached under the limitations period of the statute in a direct action for damages? We hold that such a cross-complaint for indemnity is proper." (*Valley Circle, supra,* 33 Cal.3d at p 606.)

From this language, Daon and other cross-defendants argued that here, too, the general contractor tort defendants who have themselves been timely sued, may sue Sandy, a subcontractor, for indemnity, under the exception provided by section 337.15, subdivision(c), although he could be directly sued.

However, the facts in *Valley Circle* differ from those here in a crucial respect. There, both the contractor and the subcontractor participated in the original construction; the contractor was sued for negligence in connection with that construction; and he cross-complained against the subcontractor for negligence also in connection with that same project. The subcontractor, VTN, dealt directly with Valley Circle and worked for that entity in performing the services on the project. Therefore, Valley Circle's cross-complaint for indemnity against VTN was a transactionally related cross-complaint, within section 428.10, subdivision (b), as section 337.15, subdivision (c), specifies, and was timely filed under the statute, as the *Valley Circle* decision holds. The effect of the decision is that if within 10 years of a project a complaint is on file charging negligent construction and related torts, then the defendant, pursuant to subdivision (c), may cross-complain against others who participated with him in that same project and whose negligence may have contributed to the damages. This interpretation follows straightforwardly from section 337.15: the exception in subdivision (c) permits transactionally related cross-complaints to be filed beyond the 10-year period, provided that the main action is timely filed within that period.

Here, on the other hand, there is neither transactional relationship nor joint tortfeasor relationship between Daon and Sandy. There is no relationship at all. Daon's cross-complaint against Sandy cannot qualify as an exception to the 10-year statute under section 337.15, subdivision (c),

because it is not a transactionally related cross-complaint pursuant to section 428.10, subdivision (b).

The statutory language paliny supports Sandy's interpretation. Subdivision (a) bars an action to recover damages from services on "an improvement to real property" when the action is brought more than 10 years after completion of "the development or improvement." Then subdivision (c) speaks of the exception for an action for indemnity arising out of performance of servives "referred to in this section." These references all point to one project or improvement—"the" improvement—whose consequences are not actionable after 10 years have passed. The statutory exception in subdivision (c) does not refer to a cross-complaint for subsequent improvements or later inflicted damages. It logically could not do so;it refers to a claim for indemnity arising out of a person's services " referred to in this section," that is, services on "the improvement" referred to in subdivision (a), as to which a complaint must have been on file within 10 years under that subdivision. Subdivision (c) then allows a *transactionally related* cross-complaint provided the main action is timely.

If for the sake of argument we were to assume that Daon were being sued for the results of Sandy's negligence back before 1971, then the cross-complaint would fall within the terms of subdivision (c) of section 337.15, but such a complaint against Daon would itself be barred by the 10 year statute and Daon could not be liable. Thus, to the extent that the cross-complaint rests on the theory that plaintiff's damages are partly due to Sandy's negligence back in 1971, the statute bars the claim, whether it is plaintiffs, or Daon , asserting that liability.

■ Klingbeil argues that it may be held liable to plaintiffs under the exception to limitations embodied in section 337.15, subdivision (e) when the defendant is in possession or control of the property. While disputing palintiff's contention, it claims the right to cross-complain against Sandy. This argument rests on the same fallacy as Daon's position; timeliness of the lawsuit as to Klingbeil would not establish timeliness as to Sandy. The language of subdivision (c), provising the exception for cross-complaints for indemnity, not only specifies the need for transactional relationship, but also prescribes that the cross-complaint is deemed timely only if the principal action has been filed within "the time period set forth in subdivision (a) of this section," i.e., the 10 year period. If a complaint against Klingbeil were not timely as having been filed within 10 years, but rather, were to be held timely only by virtue of subdivision (e) based on actual possession or control, the statute would provide no exception for one in Klingbeil's shoes to cross-complain for indemnity beyond the 10 year period.

■ Klingbeil contends Sandy has not negated allegations of fraud and concealment, another ground of exception to the statute under subdivision (f). (§ 337.15, subd. (f).) However, there are no allegations of fraud against Sandy which might bring into play the tolling provision of the statute resting on concealment. Further, if Daon or another cross-defendants were charged with fraud, the statute would be tolled as to that cross-defendant;but not only would such a complaint not be within subdivision (c), for purposes of permitting a late cross-complaint for indemnity, but more fundamentally, there would be no entitlement to equitable indemnity for that intentional tort. (See *Zavala* v. *Regents of University of California* (1981) 125 Cal.App.3d 646,650 [178 Cal.Rptr. 185]; see also Civ. Code, § 1668 [it is against public policy to seek exemption from one's own fraud or willful injury to another].) Accordingly Sandy is not affected by any factual issues regarding fraud and concealment.

■ As Sandy argues, the purpose of section 337.15 is to protect contractors and other professionals and tradespeople in the construction industry from perpetual exposure to liability for their work. (*Regents of University of California* v. *Hartford Acc. & Indem. Co.* (1978) 21 Cal.3d 624, 633, fn. 2 [147 Cal.Rptr. 486, 581 P.2d 197]; *Wagner* v. *State of California* (1978) 86 Cal.App.3d 922, 929-930 [150 Cal.Rptr. 489].) The statute reflects a legislative concern that "expanding concepts of liability could imperil the construction industry unless a statute of limitations was enacted." (*Moseley* v. *Abrams* (1985) 170 Cal.App.3d 355,362 [216 Cal.Rptr. 40].) Such concerns legitimately include the prohibitive cost of insurance against a perpetual and never ending risk.

Yet such a risk is inherent in real parties' interpretation of section 337.15. Daon is a subsequent improver of the property. The association has sued Daon more than 10 years after the completion of the original project, a date at which all then concerned with the initial construction should have been entitled to assume freedom from liability provided there was no complaint on file on that 10 year anniversary alleging damages resulting from the original work. No such complaint was then on file. Yet, by the fortuitous circumstance that a subsequent improver may have exposed itself to liability for the work it has done, is that repose suddenly to be ended, and the original workers on the project rendered liable beyond the time when the statute says they may be sued? Plainly this is not what the Legislature intended.

In fact, it is plain that under the statute Daon itself cannot be liable for damages traceable to the original construction, and by the same token, neither can Sandy be liable to Daon for any such damages resulting from work done more than 10 years before the complaint was filed.

This interpretation insures a finite, predictable period of exposure to liability for completed work. Ten years after completion of a work of construction, if no complaint is yet on file against any of the participants, they may all assume their exposure has ended. Under the contrary interpretation, this repose could never occur; instead every subsequent renovation would raise the liability spectre anew. Hardy would be the person who ventured into the construction industry under such conditions, assuming he could get liability insurance at all. (See *Wagner* v. *State of California, supra,* 86 Cal.App.3d 922, 929-930, quoted in *Barnhouse* v. *City of Pinole* (1982) 133 Cal.App.3d 171, 183 [183 Cal.Rptr. 881].)

Nor does *Tech-Bilt* compel a different result. That case, like *Valley Circle,* involved a developer and a subcontractor who worked on the same development. The developer was sued within the 10-year period. It was stated in dictum, but correctly, that under *Valley Circle* the developer could have cross-complained against the subcontractor. Again, this result does not present the potential liability which results when, as here, the subsequent improver is permitted to sue an earlier contractor whose services were completed more than 10 years before the suit was filed.

Further, Sandy correctly asserts it is not a joint tortfeasor with Daon and a cross-complaint for contribution is inappropriate. As stated, Daon is protected by section 337.15 from liability for pre-1971 damages. As to damages caused by its own activities after that date, Sandy had no part in such conduct and cannot have contributed to the result. Hence there is no basis for equitable indemnity. (See *Rossmoor Sanitation, Inc.* v. *Pylon, Inc.* (1975) 13 Cal.3d 622,628 [119 Cal.Rptr. 449, 532 P.2d 97]; *Munoz* v. *Davis* (1983) 141 Cal.App.3d 420,425 [190 Cal.Rptr. 400].)

■ Daon argues that a cause of action for indemnity does not accrue until loss by payment occurs; therefore Daon's cross-complaint cannot yet be barred as to Sandy. (Citing *Valley Circle, supra,* 33 Cal.3d 604,611.) However, although the general proposition is correct, we hold that in this situation the specific provisions of section 377.15 control regarding latent defects, and provide a 10-tear cutoff which applies even in advance of the judgement against the tortfeasor seeking indemnity. This narrow issue appears to be of first impression in California. We believe such interpretation of the statutes is essential to prevent clear violation of the legislative intent reflected by the 10-year statute. Otherwise, as we have stated, perpetual liability would result. The result works no injustice here because, as expalimed above, Daon is not laible to plaintiffs for the claimed defective design of Sandy, but solely for its own work on the project. The Legislature has decreed that even as to latent defects, 10 years is long enough for there to be liability exposure.

 The long and the short of it is that Sandy cannot be liable for damages based on original construction defects in the project. Since there is no other basis for Sandy to be liable, he is entitled to summary judgement and dismissal of the cross-complaints against him. We will issue a writ to this effect.

Real parties in interest have been notified that a peremptory writ in the first instance could be issued here, and Daon and Klingbeil have opposition. The peremptory of mandate will issue in the first instance. (§ 1088; *Palma v. U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171,177-182 [203 Cal.Rptr. 626, 681 P.2d 893].)

Let a writ of mandate issue directing respondent court to vacate its order denying summary judgment and instead to enter summary judgment in favor of Sandy on all cross-complaints for indemnity. As prevailing party, Sandy shall have costs in this proceeding.

Capaccioli, J., and Chapman, J.,* concurred.

A petition for a rehearing was denied June 27, 1988.

---

* Assigned by the Chairperson of the Judicial Council.