[Nos. D012030, D012031, D012142. Fourth Dist., Div. One. May 10, 1991.]

TIME FOR LIVING, INC., et al., Cross-complainants and Appellants, v. GUY HATFIELD HOMES/ALL AMERICAN DEVELOPMENT COMPANY, Cross-defendant and Respondent.

**COUNSEL**

Edwards, White & Sooy and Robert von Zirngibl for Cross-complainants and Appellants.

Lorber, Grady, Farley & Volk, William P. Volk and Daniel W. Kelsberg for Cross-defendant and Respondent.

**OPINION**

**FROEHLICH, J.**—We here review summary judgments granted in favor of a cross-defendant sued in indemnity. The defendants and cross-complainants are real property developers who were timely sued by consumers for latent defects in the "work of improvement" purchased by the consumers. The cross-defendant is a prior owner who improved the property at an earlier date and could not be sued directly by the consumer plaintiffs because of the bar of the statute of limitations. The issue raised is whether the developers can bring their claim in indemnity against the prior owner, on the theory that the prior owner's work on the land contributed to the latent defects, even though the statute of limitations would preclude the claim if brought directly by the consumers. The trial courts below, apparently concluding the prior improver's activities were as a matter of law not "transactionally related" to the matters alleged in the consumers' lawsuits, ruled the indemnity cross-complaint was improper.

We disagree. Our review of the statutory scheme and case law convinces us that when a person (prior owner, subcontractor or developer) contributes to a work of improvement, the ultimate developer is statutorily entitled to join an action for equitable indemnity from that person to the extent the damages to the consumer are attributable to the prior improver's contribution to the work of improvement. We conclude that the principal issue in this arena is not the question of permissive joinder of the action, but whether the prior work was related to the same work of improvement (in which case the 10-year statute will not be a bar if the principal action is timely) or whether the prior work constituted improvement of a severable and distinct work of improvement (in which case the statute will run from the date of completion of that prior improvement). This is a question of fact which was not resolved in this motion for summary judgment. Accordingly, we must reverse.

## I. *Factual Background*

The facts in these three actions, consolidated for purposes of appeal,[1] are relatively simple, at least insofar as they are material to the issue raised on appeal. Consumers purchased residences from developers and subsequently discovered the existence of latent defects, including foundation problems, structural movement, soils problems or subsidence problems. Upon such discovery, consumers timely sued the developers, within the 10-year statute of limitations provided by Code of Civil Procedure[2] section 337.15.

The developers subsequently cross-complained against numerous parties, including respondent, for indemnity. As to respondent, the developers' claims sought total and/or equitable indemnity based on respondent's role in developing the property. Specifically, developers alleged respondent had built and manufactured the finished lots, which developers later purchased from an intermediate entity and upon which developers constructed the consumers' residences. Developers alleged that because consumers' lawsuits sought recovery based on detrimental soils conditions, developers were entitled to indemnity from respondent to the extent respondent's activities (i.e., in creating and manufacturing the lots upon which the homes were built) contributed to the cause of damages for which recovery was sought by consumers from developers.

Respondent subsequently moved for summary judgment, claiming (1) consumers' lawsuit was filed more than 10 years after respondent had completed its activities relative to the real property, and hence any direct action against respondent was barred by the statute of limitations provided by section 337.15, subdivision (a); and (2) developers' cross-complaint was also barred because it was not a transactionally related cross-complaint within the meaning of the exception provided by section 337.15, subdivision (c).

In support of its summary judgment motion, respondent produced no evidence to rebut the argument it had built or manufactured the lots upon

---

[1]There are three underlying actions which, because of the substantial identicality of the legal and factual questions, were consolidated for purposes of appellate disposition. All three superior court complaints were filed by purchasers (or their subrogees) of single-family residences located in the same development, seeking damages from appellants Time Development Company, Bahar Contracting Company and/or Time For Living, Inc. for alleged defective construction. For ease of reference, the original plaintiffs/purchasers will be denominated "consumers" and appellants will be referred to as "developers."

In each of consumers' actions, developers cross-complained against Guy Hatfield Homes/All American Development Company (respondent) seeking indemnity based on the alleged role it played as a builder or manufacturer of the finished lots upon which consumers' residences were ultimately constructed.

[2]All statutory references are to the Code of Civil Procedure unless otherwise specified.

which the homes were later constructed.[3] Instead, respondent's evidentiary showing was limited to proving: (1) respondent acquired the property in October 1972 and sold it to Hallcraft Homes in November 1973; (2) Hallcraft thereafter sold the property to American Housing Guild, which later resold the property to developers; and (3) developers then constructed and sold the homes to consumers, with sales starting not later than November 1976. Respondent argued that because it parted with the property in late 1973, section 337.15, subdivision (a) barred all claims against it after late 1984, whether in the form of a direct action by consumers or a cross-complaint by the developers for indemnity.

Respondent further contended the cross-complaints, albeit for indemnity and hence facially within the definitional inclusion of section 337.15, subdivision (c), were nevertheless barred for not meeting the specific exception of section 337.15, subdivision (c), which permits filing of an indemnity claim by way of a transactionally related cross-complaint. Respondent contended there was no triable issue of fact as to whether developers' cross-complaints qualified as subdivision (c) cross-complaints because as a matter of law they were *not* transactionally related to the claims asserted by consumers.

The trial courts, apparently concluding as a matter of law the cross-complaints for indemnity were not transactionally related to the consumers' complaint, and relying principally on *Sandy* v. *Superior Court* (1988) 201 Cal.App.3d 1277 [247 Cal.Rptr. 677], granted the motions for summary judgment. Following entry of judgment, developers appealed.

We conclude the trial court erred in entering summary judgment, because there is at least a triable issue of fact as to whether respondent's alleged role (i.e., in manufacturing the lots) constituted a sufficient contribution to the overall work of improvement to consider respondent a joint tortfeasor, against whom a cross-complaint for equitable comparative indemnity is proper even though respondent completed its contribution more than 10 years before the consumers' lawsuit was filed. Accordingly, we will reverse the judgment.[4]

---

[3]Respondent indeed conceded, for purposes of its summary judgment motion, that it had built or manufactured the lots in question. Even without such concession, the evidence raised at least triable issues of fact as to whether respondent had built or manufactured the lots. Evidence was submitted, for example, that during the period respondent had owned the property, it had subdivided the property, it had a grading plan for the subdivision prepared, and it had in fact done the grading work. Construing the evidence most favorably to the party resisting summary judgment (*Rawlings* v. *D. M. Oliver, Inc.* (1979) 97 Cal.App.3d 890, 895-896 [159 Cal.Rptr. 119]), there is at least a triable issue of fact as to whether respondent built or manufactured the lots in question.

[4]In light of our disposition, it is unnecessary to resolve developers' remaining claim of error concerning entry of the cost bill.

## II. *A Cross-complaint for Indemnity Against a Contributor to a Work of Improvement Is Not Barred Merely Because a Direct Action by the Consumer Against That Contributor Is Barred*

The statutory scheme under section 337.15 sets a 10-year limitation on actions for damages, based on latent defects, against any person who either develops or makes certain contributions to a work of improvement on real property. (§ 337.15, subd. (a).) Moreover, pursuant to section 337.15, subdivision (g), the 10-year period as to a contributor begins when the individual contribution to the work of improvement has been substantially completed, rather than being tolled until the project is entirely completed. (See *Schwetz* v. *Minnerly* (1990) 220 Cal.App.3d 296, 305-306 [269 Cal.Rptr. 417] [§ 337.15, subd. (g) was intended to codify the holding of *Liptak* v. *Diane Apartments, Inc.* (1980) 109 Cal.App.3d 762 (167 Cal.Rptr. 440) that the statute for direct actions against contributors runs from the date such contributor substantially completes his contribution].)

Actions barred after 10 years encompass both direct actions by the consumer against the contributor (§ 337.15, subd. (a)) and actions for indemnity against such contributor based upon his role in the project (§ 337.15, subd. (c)), subject to the one exception described below.[5] This latter provision of section 337.15, subdivision (c) thus alters the rule ordinarily applicable to statutes of limitations on indemnity actions: ■ Generally, an indemnity action does not *accrue*, and hence the statute of limitations does not start, until the prospective indemnitee has paid the judgment or settlement.[6] Section 337.15, subdivision (c) alters this rule, barring independent actions for indemnity unless brought within 10 years after substantial completion of the contributor's work, even though the indemnitee has not yet paid on the judgment.

Section 337.15, subdivision (c)'s bar on indemnity actions is subject, however, to one exception critical in this case: It permits an indemnity claim

---

[5]Section 337.15, subdivision (c) provides:

"As used in this section, 'action' includes an action for indemnity brought against a person arising out of that person's performance or furnishing of services or materials referred to in this section, except that a cross-complaint for indemnity may be filed pursuant to subdivision (b) of Section 428.10 in an action which has been brought within the time period set forth in subdivision (a) of this section."

[6]As explained in *People* ex rel. *Dept. of Transportation* v. *Superior Court* (1980) 26 Cal.3d 744 [163 Cal.Rptr. 585, 608 P.2d 673], a tort defendant's right to seek comparative equitable indemnity from a cotortfeasor does not accrue at the time the tort plaintiff's right of action accrues, but instead accrues when such defendant/prospective indemnitee has paid the judgment on which he is entitled to seek indemnity. Such an indemnity action is not barred even though the tort plaintiff's direct right of action against the prospective indemnitor is barred by lapse of the statute of limitations applicable to the tort plaintiff. (*Id.* at pp. 750-755.)

to be filed *more* than 10 years after the contributor has finished his work if filed by way of cross-complaint in an action timely filed against the prospective indemnitee. ■ Construing the operation of this subdivision (c) proviso, the court in *Valley Circle Estates* v. *VTN Consolidated, Inc.* (1983) 33 Cal.3d 604 [189 Cal.Rptr. 871, 659 P.2d 1160] definitively held:

"Thus, a defendant timely sued under section 337.15, subdivision (a), *may file under subdivision (c) a cross-complaint for indemnity against a third party who could not otherwise be reached by a direct action for indemnity filed by the defendant, or by a direct suit for damages filed by the plaintiff.*" (*Id.* at p. 609, italics added.)

Thus, respondent is not necessarily insulated from liability merely because it completed its contribution more than 10 years before the consumers' lawsuit was filed. While such fact bars a direct action by the consumers, respondent is still open to potential liability if developers' indemnity cross-complaint is proper under section 337.15, subdivision (c)'s exception.

III. *A Cross-complaint for Comparative Equitable Indemnity Is Ordinarily Proper Under Code of Civil Procedure Section 337.15, Subdivision (c) Because It Is, on Its Face, Transactionally Related to the Claims Asserted in the Consumers' Lawsuit*

Section 337.15, subdivision (c) permits an indemnity cross-complaint to be "filed *pursuant to subdivision (b) of Section 428.10* in an action which has been brought within the time period set forth in subdivision (a) of this section." (Italics added.) Respondent's principal contention, accepted by the trial courts below, is that developers' cross-complaint does not fit within subdivision (c)'s exception because it is not transactionally related within the meaning of section 428.10, subdivision (b). It is here that we part company with respondent.

A. *Developers' Cross-complaint Is Transactionally Related to the Main Action*

■ Respondent essentially argues developers' indemnity cross-complaint is as a matter of law not transactionally related to the consumers' complaint because respondent was a prior owner whose contributions preceded and were unconnected with developers' later construction activities, and who had no contractual or other relationship with developers.

Under section 428.10, subdivision (b), the cross-complaint must assert claims related to those asserted *against* developers.[7] Thus, we must first assess the assertions of the consumers' complaint. The consumers' claims against developers are premised on faulty construction, alleging the subject residences were defectively constructed because of foundation problems, soils problems or subsidence problems. Developers' cross-complaint is transactionally related to the consumers' claims, because it seeks comparative equitable indemnity for all or part of *the precise damages claimed by consumers,* alleging *the precise problems* claimed by consumers (i.e., foundation problems) were at least partly attributable to respondent's actions in creating the lots.

Cross-complaints for comparative equitable indemnity would appear virtually always transactionally related to the main action. ■ The courts, both in this district (see *Platt* v. *Coldwell Banker Residential Real Estate Services* (1990) 217 Cal.App.3d 1439, 1444-1448 [266 Cal.Rptr. 601]) and in many other districts (see, e.g., *Daon Corp.* v. *Place Homeowners Assn.* (1989) 207 Cal.App.3d 1449, 1454-1455 [255 Cal.Rptr. 448] [dealing with section 428.10]; *Lewis Avenue Parent Teachers' Assn.* v. *Hussey* (1967) 250 Cal.App.2d 232, 235 [58 Cal.Rptr. 499] [dealing with predecessor statute]), have repeatedly recognized that cross-complaints for comparative equitable indemnity are specifically allowed under section 428.10, subdivision (b) because of their transactional relationship to the complaint. Indeed, in *American Motorcycle Assn.* v. *Superior Court* (1978) 20 Cal.3d 578 [146 Cal.Rptr. 182, 578 P.2d 899], the landmark case establishing the right to equitable indemnity among joint tortfeasors based on comparative fault (the precise right asserted by developers' cross-complaint), our Supreme Court stated:

"As early as 1962, our court [in *Roylance* v. *Doelger* (1962) 57 Cal.2d 255 (19 Cal.Rptr. 7, 368 P.2d 535)] concluded that under the then governing provisions of the Code of Civil Procedure, a defendant could file a cross-complaint against a previously unnamed party when the defendant properly alleged that he would be entitled to indemnity from such party should the plaintiff prevail on the original complaint . . . . [W]hen the cross-complaint statutes were completely revised in 1972, the Legislature specifically codified the *Roylance* rule in section 428.10 . . . . [¶] The history of the legislation leaves no doubt but that these provisions authorize a defendant to

---

[7]Section 428.10, subdivision (b) provides, in part, that a party may cross-complain against a third party whether or not such person is already a party to the action "if the cause of action asserted in [the] cross-complaint . . . arises out of the same transaction, occurrence, or series of transactions or occurrences as the cause brought against [the party filing the cross-complaint]."

file a cross-complaint against a person, not named in the original complaint, from whom he claims he is entitled to indemnity." (*American Motorcycle Assn.*, *supra*, 20 Cal.3d at pp. 605-606.)

The foregoing authorities leave little doubt that a cross-complaint for comparative equitable indemnity is almost by definition transactionally related to the claims asserted by the plaintiff, because a claim for equitable indemnity depends on the allegation that the same harm for which plaintiff seeks to hold defendant liable is properly attributable, at least in part, to the acts of the cross-defendant. (*Platt* v. *Coldwell Banker Residential Real Estate Services*, *supra*, 217 Cal.App.3d at p. 1445, fn. 7.) An indemnity claim effectively seeks to apportion among the parties to the indemnity action the precise liability claimed by the plaintiff in the main action; therefore the indemnity claim of necessity arises out of the same occurrences or series of occurrences as asserted by the plaintiff.

     B.   *Whether Respondent Is Liable as a Joint Tortfeasor Is an Issue of Fact*

Respondent claims to have no relationship, contractual or otherwise, to the matters claimed by consumers. While the lack of a contractual relationship appears uncontroverted, there are sufficient facts from which a trier of fact could conclude respondent was a joint tortfeasor with developers in causing the harm for which the consumers seek recovery, entitling developers to equitable indemnity.[8]

Although respondent claims it cannot be considered a joint tortfeasor, this court (on analogous facts) has previously decided this question adversely to respondent's position. In *GEM Developers* v. *Hallcraft Homes of San Diego, Inc.*, *supra*, 213 Cal.App.3d 419, a prior owner of real property mass-graded

---

[8]In addition to the allegations of the cross-complaint (i.e., respondent built the lots in a defective manner, leading to consumers' losses), uncontroverted by respondent, the evidence suggests respondent did play a role in producing the final "work of improvement"—the residences. The evidence suggests respondent both subdivided the lots into their present configurations and may have produced or graded the individual pads on which the homes ultimately were constructed. Moreover, the period from respondent's ownership (and contributions to the final product) to the time residences were actually sold was only three years. A trier of fact might well conclude that respondent, having begun the project, and developer, having finished essentially the same work of improvement, were joint tortfeasors whose contributions united to produce a single indivisible harm. (See *GEM Developers* v. *Hallcraft Homes of San Diego, Inc.* (1989) 213 Cal.App.3d 419 [261 Cal.Rptr. 626] [project begun and graded by first owner and finished by subsequent owner can create joint tortfeasor status]; and *Gentry Construction Co.* v. *Superior Court* (1989) 212 Cal.App.3d 177 [260 Cal.Rptr. 421] [comparative equitable indemnity available as between first owner, who began and graded project, and second owner, who finished development and sold to public].)

and filled the property, apparently intending ultimately to develop it. Three years later, he instead sold the graded land, the eventual ownership of which (through a series of transactions) was assumed by GEM, who continued developing the property. GEM then sold the property to consumers, who, after several years, sued GEM for damages based on soils problems. (*Id.* at pp. 423-424.) GEM then cross-complained for equitable indemnity, claiming in part that the prior owner was a joint tortfeasor based on his development activities. This court held such allegations were sufficient to establish potential joint tortfeasor status, stating:

"The term 'joint tortfeasor' as used in the comparative equitable indemnity context, . . . is a broad term which includes joint, concurrent *and successive* tortfeasors. [Citation.] 'Where the transaction rests upon related facts, either concurrent or successive, joint or several, which legally create a detriment compensable against multiple actors, the right of indemnity should follow [*American Motorcycle* guidelines] . . . .' [¶] Here, there were facts alleged that would support a finding [*prior owner*] *was a joint tortfeasor with* [*developer*], *i.e., that the actions of* [*prior owner*] *and* [*developer*] *combined to cause the* [*consumer's*] *injury.* (See *Kohn* v. *Superior Court* (1983) 142 Cal.App.3d 323, 329 [191 Cal.Rptr. 78] [the actions of the defendants 'combined to create one indivisible injury'] . . . ." (*GEM Developers, supra,* 213 Cal.App.3d at p. 431, italics added.)

While respondent's contribution to the work of improvement preceded developers' contribution, that fact is not dispositive. ■ It is well established that tortfeasors need not have acted in unison, or even concurrently, to be considered as joint tortfeasors. Even tortfeasors whose *successive* acts unite to produce an indivisible injury may be considered joint tortfeasors for purposes of equitable indemnity. (See *Considine Co.* v. *Shadle, Hunt & Hagar* (1986) 187 Cal.App.3d 760, 767 [232 Cal.Rptr. 250]; *Standard Pacific of San Diego* v. *A. A. Baxter Corp.* (1986) 176 Cal.App.3d 577, 589 [222 Cal.Rptr. 106].) ■ Here, the successive acts of respondent (in grading) and developers (in building) apparently united to produce an indivisible injury, raising a factual question as to whether respondent is a joint tortfeasor for purposes of equitable indemnity.

    C. *The Factual Issue for Determination Is Whether the Work of Cross-defendant Was Performed on the Same "Development or Improvement" as the Work of the Cross-complainants*

The determination as to whether the work of the cross-defendant grader is transactionally related to the subsequent work of the cross-complainants developers, so as to come within the provision of section 428.10, subdivision

(b), is a pleading issue. ■ The contention of improper joinder of actions would, at least in the ordinary situation, be raised by a demurrer on the ground of misjoinder, and the determination would be made as a matter of law for the court (even though underlying factual determinations might be required). (See 5 Witkin, Cal. Procedure (3d ed. 1985) Pleading, § 923, pp. 360, 361.) As we have noted above, an attack on joinder in the real property development situation, where the joined cross-defendant worked on the same real estate later developed by the cross-complainant, would seem doomed when based on the joinder provisions of section 428.10, subdivision (b), because the identity of the realty in question as well as the damage to the ultimate consumer conclusively permits joinder. (See 5 Witkin, *supra*, § 1092, at pp. 513, 514.)

■ An avoidance of the 10-year statute of limitations by the cross-complainant also depends, however, upon compliance with the condition of section 337.15, to wit: that the parties have been engaged in work on the same "development or improvement." This gloss on section 337.15 was established by *Sandy* v. *Superior Court, supra,* 201 Cal.App.3d at page 1277. In *Sandy*, an architect performed services on an apartment project, completing his contribution in late 1970. The apartments subsequently were completed and then rented to the public. Many years later, a developer purchased the apartments and undertook massive renovation and reconstruction work for purposes of converting the building from apartments to condominiums. The conversion was apparently completed in 1981. (*Id.* at p. 1280.)

The developer was sued in 1983 for construction defects in the condominiums, and cross-complained against the architect for equitable indemnity. The *Sandy* court held the architect was protected by the 10-year statute of limitations, reasoning that the apartment building was a completed work of improvement independent and distinct from the condominium project which gave rise to the suit against the developer. (201 Cal.App.3d at pp. 1282-1284.) Because the 10-year statute had run on the only "work of improvement" to which the architect had contributed (i.e., the apartments), and because the court concluded the architect was neither a contributor to nor a joint tortfeasor in the severable, independent "work of improvement" for which the developer was sued (i.e., the condominiums), the cross-complaint for indemnity was improper. As explained in *Sandy, supra,* 201 Cal.App.3d at page 1284:

"Subdivision (a) [of section 337.15] bars an action to recover damages from services on 'an improvement to real property' when the action is brought more than ten years after completion of 'the development or

improvement.' Then subdivision (c) speaks of an exception for an action for indemnity arising out of performance of services 'referred to in this section.' These references all point to one project or improvement—'the' improvement—whose consequences are not actionable after 10 years have passed. The statutory exception in subdivision (c) does not refer to a cross-complaint for subsequent improvements or later inflicted damages."

■ Thus, even though the work of an early grader and a subsequent developer may, and indeed presumably always will, be transactionally related under section 428.10, the separate works may not relate to the same "development or improvement" under section 337.15. Whether the development is the same impresses us as essentially a question of fact. We would assume that a development is complete when a final product has been finished and marketed. There will no doubt be cases, as in *Sandy*, in which the prior work was so obviously related to a project then completed and marketed that it cannot as a matter of law be deemed a component in a subsequent work of improvement on the same land.

■ That, however, is not our case. The facts established by the respondent grader in its motion for summary judgment failed to address the question of the existence of severable "developments" on the same land. It is conceivable that respondent's work on the realty later developed by appellant resulted in a severable, final and completed development, as to which the 10-year statute then irrevocably began to run. From the facts before us and the trial judge, however, it is just as likely that respondent's work was but a step in the evolution of the modifications to the land which ultimately became the structures the defects in which gave rise to the principal lawsuit. Since this issue of fact was not resolved by the documentation supporting the motion for summary judgment, the motion should have been denied.

DISPOSITION

The judgments are reversed.

Huffman, Acting P. J., and Amos, J.,* concurred.

---

*Judge of the Municipal Court for the San Diego Judicial District sitting under assignment by the Chairperson of the Judicial Council.