[No. A051674. First Dist., Div. Four. July 29, 1991.]

INDUSTRIAL RISK INSURERS, Plaintiff and Appellant, v.
THE RUST ENGINEERING COMPANY, Defendant and Respondent.

**[Opinion certified for partial publication.*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part III.

1040

COUNSEL

Robins, Kaplan, Miller & Ciresi, Andrew W. Horstman, William P. Linhoff, Jr., and Frank S. Towner for Plaintiff and Appellant.

Cooper, White & Cooper, John P. Makin, Patricia A. Perkins and Anthony W. Hawthorne for Defendant and Respondent.

OPINION

**PERLEY, J.**—In this case we hold that the 10-year time limit Code of Civil Procedure section 337.15 places on suits for latent defects in improvements to real property commences when the defendant's work on the improvement is substantially completed, rather than when the improvement itself is substantially completed. The trial court here granted the motion of respondent, The Rust Engineering Company, for summary judgment under section 337.15, finding that the $20 million damage claim of appellant, Industrial Risk Insurers, was time barred and that there was no triable issue of fact to the contrary. We affirm the judgment entered in favor of respondent.

I.

A 400-ton boiler at Louisiana Pacific Fiberboard Corporation's paper mill in Antioch, California, exploded on July 5, 1987, killing 3 people, wounding several others and causing extensive property damage. Appellant, Fiberboard's property and business interruption insurer, filed suit against respondent on December 24, 1987, to recover amounts paid under its policy on account of the explosion. The complaint alleged that the explosion was caused by failure of the rapid drain system respondent designed for the boiler, and that respondent was liable for the resulting damages under theories of strict liability, negligence or breach of warranty. Judgment was entered for respondent on the ground that it had substantially completed its

services in connection with the rapid drain system by December 24, 1977, 10 years before the filing of the complaint.

There is no dispute on appeal that the rapid drain system was an "improvement" to real property within the meaning of Code of Civil Procedure section 337.15.[1] ▮ The issue is whether this statute's 10-year time frame for suits for latent defects commenced when the system itself was substantially completed, or earlier, when respondent's work on the system was substantially completed. In the published portion of our discussion, we will explain why we conclude that the limitations period began with the substantial completion of respondent's services. In the unpublished portion, we will address the evidence presented in connection with the motion for summary judgment, which established that virtually all of respondent's services with respect to the rapid drain system were furnished more than 10 years prior to the filing of the complaint.

## II.

We are called upon to construe subdivisions (a) and (g) of Code of Civil procedure section 337.15, which read as follows: "(a) No action may be brought to recover damages from any person, or the surety of a person, who develops real property or performs or furnishes the design, specifications, surveying, planning, supervision, testing, or observation of construction or construction of an improvement to real property more than 10 years after the substantial completion of the development or improvement for any of the following: [¶] (1) Any latent deficiency in the design, specification, surveying, planning, supervision, or observation of construction or construction of an improvement to, or survey of, real property. [¶] (2) Injury to property, real or personal, arising out of any such latent deficiency. . . . [¶] (g) The 10-year period specified in subdivision (a) shall commence upon substantial completion of the improvement, but not later than the date of one of the following, whichever first occurs: [¶] (1) The date of final inspection by the applicable public agency. [¶] (2) The date of recordation of a valid notice of completion. [¶] (3) The date of use or occupation of the improvement. [¶] (4) One year after termination or cessation of work on the improvement. [¶] *The date of substantial completion shall relate specifically to the performance or furnishing [sic] design, specifications, surveying, planning, supervision, testing, observation of construction or construction services by each profession*

---

[1]In view of our conclusion that the suit is untimely under this 10-year statute, we do not reach respondent's alternative argument that the suit alleges "patent" rather than latent defects, and is therefore barred by the 4-year statute of limitations for suits based on patent defects in the design of real property improvements (Code Civ. Proc., § 337.1).

*or trade rendering services to the improvement."* (§ 337.15, subds. (a), (g) [italics added].)

■ A statute should be interpreted so as to effectuate its apparent purpose. (*Delaney v. Superior Court* (1990) 50 Cal.3d 785, 798 [268 Cal.Rptr. 753, 789 P.2d 934]; *Moyer v. Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 252 [110 Cal.Rptr. 144, 514 P.2d 1224].) The legislative purpose is determined in the first instance by the language used in the statute. (*Brown v. Kelly Broadcasting Co.* (1989) 48 Cal.3d 711, 724 [257 Cal.Rptr. 708, 771 P.2d 406].) "If the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature." (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299] [describing the "plain meaning" rule].)

■ The language we have highlighted in the last sentence of Code of Civil Procedure section 337.15, subdivision (g) "relates" the concept of substantial completion to services rendered to an improvement, and it relates this concept "specifically" to the services rendered by "each" profession. It is somewhat imprecise to say that things are related without saying how they are related. But the reasonably plain meaning of this sentence is that the limitations period commences as to each profession on the date its services to the improvement are substantially complete.

Appellant offers no alternative construction of the words used in the last sentence of Code of Civil Procedure section 337.15, subdivision (g). Appellant maintains, however, that the sentence "cannot be read to eliminate" the references to "substantial completion of the improvement" in the first sentences of Code of Civil Procedure section 337.15, subdivisions (a) and (g). Appellant also suggests that our interpretation of the last sentence of subdivision (g) effectively negates subdivision (g)(4), which states that the limitations period cannot commence any later than one year "after termination or cessation of work on the improvement." Appellant reasons that subdivision (g)(4) will never come into play if the limitations period is triggered by the substantial completion of services.

■ "[S]tatutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible." (*Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1387 [241 Cal.Rptr. 67, 743 P.2d 1323].) ■ The last sentence of Code of Civil Procedure section 337.15, subdivision (g) is not necessarily inconsistent with subdivision (g)(4). The latter provision ensures that the limitations period will begin to run at some fixed point after work on an improvement stops, even if some portion of the work is not substantially complete. However, it is difficult to reconcile the last sentence of subdivision (g) with the references elsewhere in the statute to substantial completion of the

improvement. The statement in the first sentence of subdivision (g) that the limitations period "shall commence upon substantial completion of the improvement" poses an obvious problem for our conclusion that the limitations period can commence for a trade or profession *before* an improvement is substantially complete. There is at least sufficient conflict in the language of the statute to preclude application of the plain meaning rule.

██ If a statute "is on its face amenable to two diametrically opposed interpretations, each of which conflicts in some significant way with the words the Legislature used . . . . [¶] we are compelled to impute to the statute that meaning which comports with the objective the Legislature sought to achieve." (*American Tobacco Co.* v. *Superior Court* (1989) 208 Cal.App.3d 480, 485-486 [255 Cal.Rptr. 280].) "Where uncertainty exists consideration should be given to the consequences that will flow from a particular interpretation. [Citation.] Both the legislative history of the statute and the wider historical circumstances of its enactment may be considered in ascertaining the legislative intent." (*Dyna-Med, Inc.* v. *Fair Employment & Housing Com., supra,* 43 Cal.3d at p. 1387.)

Section 337.15 of the Code of Civil Procedure was enacted in 1971 in response to lobbying by the construction industry for statutes limiting the duration of liability for real property improvements. (See generally Boyle & Hastings, *California Code of Civil Procedure Sections 337.1 and 337.15: Defective Construction Defect Statutes* (1990) 21 Pacific L.J. 235, 242-243.) ██ Numerous opinions have noted that the purpose of section 337.15 is to shield members of the construction industry from liability of indefinite duration for property damage caused by their work. (See *Martinez* v. *Traubner* (1982) 32 Cal.3d 755, 760 [187 Cal.Rptr. 251, 653 P.2d 1046]; *Regents of University of California* v. *Hartford Acc. & Indem. Co.* (1978) 21 Cal.3d 624, 633, fn. 2 [147 Cal.Rptr. 486, 581 P.2d 197]; *Sandy* v. *Superior Court* (1988) 201 Cal.App.3d 1277, 1285 [247 Cal.Rptr. 677]; *Cascade Gardens Homeowners Assn.* v. *McKellar & Associates* (1987) 194 Cal.App.3d 1252, 1256 [240 Cal.Rptr. 113]; *Liptak* v. *Diane Apartments, Inc.* (1980) 109 Cal.App.3d 762, 773 [167 Cal.Rptr. 440]; *Ernest W. Hahn, Inc.* v. *Superior Court* (1980) 108 Cal.App.3d 567, 570 [166 Cal.Rptr. 644], disapproved on another point in *Martinez* v. *Traubner, supra; Leaf* v. *City of San Mateo* (1980) 104 Cal.App.3d 398, 404-405 [163 Cal.Rptr. 711].)

██ Our decision is consistent with the statutory purpose identified in these cases. A defendant's services with respect to an improvement may be completed well before the improvement itself is finished. If the limitations period does not commence until substantial completion of the improvement, construction industry members may be subject to liability for an indefinite

time over 10 years after the substantial completion of their work. We do not believe that this was what the Legislature intended when it added subdivision (g) to the statute in 1981.

Appellant has a reasonable argument to the contrary based on portions of the legislative history of Code of Civil Procedure section 337.15, subdivision (g). There are legislative committee and caucus reports indicating that this subdivision was intended to codify the holding of *Liptak* v. *Diane Apartments, Inc., supra,* 109 Cal.App.3d 762. (See *Schwetz* v. *Minnerly* (1990) 220 Cal.App.3d 296, 305-306 [269 Cal.Rptr. 417].) The Liptaks' tract house was damaged by earth movements, and they sued two companies involved in the grading and filling of the slope that moved. Work on the slope was one improvement within the tract development. This improvement was completed over 10 years before the suit was filed. The development, however, was not substantially completed until less than seven years before the suit was filed. The issue was whether the limitations period under section 337.15, subdivision (a) commenced with substantial completion of the development or the improvement. The court held that the 10-year period "commences to run in respect to a person who has contributed towards 'an improvement' when such improvement has been substantially completed irrespective of whether or not the improvement is part of a development." (*Liptak* v. *Diane Apartments, Inc., supra,* 109 Cal.App.3d at p. 772.)

The Senate Committee on Judiciary and the Senate Republican Caucus digests for the bill that became Code of Civil Procedure section 337.15, subdivision (g) state in pertinent part: " 'In [*Liptak*], the court of appeal held that with respect to a developer, the ten-year limitation period does not commence until the development is substantially completed. [¶] With respect to a person who has contributed to an improvement on the developed property, the court held that the period commences when that particular improvement has been substantially completed, regardless of the completion time of the development itself. [¶] AB 605 would codify the *Liptak* holding on these issues.' " (*Schwetz* v. *Minnerly, supra,* 220 Cal.App.3d at pp. 305-306.) In light of these statements, appellant submits that the Legislature intended the limitations period to begin upon substantial completion of the improvement, rather than a trade or profession's contribution to the improvement.

The *Liptak* court had no occasion to distinguish between completed improvements and completed contributions to improvements; it was only called upon to distinguish completed improvements from completed developments. Its holding thus does not extend to our situation—despite how that holding was phrased—and a legislative intent to codify that holding is not dispositive. In any event, other portions of the legislative history indicate

that Code of Civil Procedure section 337.15, subdivision (g) encompasses the reasoning, as well as the holding, of *Liptak*, and the reasoning of *Liptak* supports a distinction between completion of services and completion of an improvement.

The *Liptak* court wrote: "In the matter at bench if we were to hold that the 10-year period provided for in section 337.15 commenced to run at the time the development was substantially completed, the period of respondents' liability would extend for 15 years beyond the time their work on the improvement had actually been completed. By adopting such a construction, the period could be extended even longer, depending upon the activities of the developer. However, if the same work had been performed for one other than a developer, the period would begin to run upon substantial completion of the work. In *Regents of University of California* v. *Hartford Acc. & Indem. Co.*, *supra*, 21 Cal.3d 624, 633, footnote 2, the court indicated that section 337.15 was for the benefit of the contractor, in stating: 'A contractor is in the business of constructing improvements and must devote his capital to that end; the need to provide reserves against an uncertain liability extending indefinitely into the future could seriously impinge upon the conduct of his enterprise . . . . ' [¶] The construction which appellants wish placed upon section 337.15 could result in extending a contractor's liability for an indefinite period, long beyond the 10-year period anticipated by the section . . . ." (*Liptak* v. *Diane Apartments, Inc.*, *supra*, 109 Cal.App.3d at pp. 772-773.)

There is something in the foregoing passage for both sides. The court speaks of time running from the completion of work, and uses the words "their" work and "the" work as if the terms were synonymous, when the difference may amount to $20 million in our case. But the thrust of this passage is that the statute should be liberally construed to avoid indefinite periods of liability, and that this is best accomplished by tying the period of liability to work the defendant has done. As previously noted, these same considerations support our interpretation of Code of Civil Procedure section 337.15, subdivision (g).

These considerations are also represented in the legislative history. The record in our case includes the Assembly Committee on Judiciary's digest of the bill that became Code of Civil Procedure section 337.15, subdivision (g). This digest comments that "The bill's proponents state the definition of 'substantial completion' in the bill is needed so that the various professions and trades rendering services to an improvement may be able to predict with certainty when their liability for 'latent deficiencies' will terminate." The digest also explains that the last sentence of subdivision (g) "further delineates the liability of each participant in an improvement by providing that

the date of substantial completion shall relate specifically to the performance or furnishing of services, as defined, by each profession or trade rendering services to the improvement." This legislative determination to draw lines with respect to the liability of each participant in an improvement is consistent with our reading of the last sentence of subdivision (g).

We note finally that our decision is supported by the California Supreme Court's opinion in *Valley Circle Estates* v. *VTN Consolidated, Inc.* (1983) 33 Cal.3d 604 [189 Cal.Rptr. 871, 659 P.2d 1160]. In *Valley Circle*, the plaintiffs' home was damaged from soil subsidence. They sued the general contractor of the residence, which was completed less than 10 years before the complaint was filed. The general contractor cross-complained for equitable indemnity against a subcontractor that had completed its services 12 years before the complaint was filed. The issue on appeal was whether the cross-complaint for indemnity was timely under Code of Civil Procedure section 337.15. The court held that "a cross-complaint for indemnity may be filed *more than 10 years after the alleged indemnitor has substantially completed his services,* provided that the underlying action was itself brought within the 10-year limitation period of the statute. [¶] Thus, a defendant timely sued under section 337.15, subdivision (a), may file under subdivision (c) a cross-complaint for indemnity against a third party *who could not otherwise be reached* by a direct action for indemnity filed by the defendant, or by a direct suit for damages filed by the plaintiff." (33 Cal.3d at p. 609 [italics added].) The highlighted language assumes that the limitations period for direct actions under Code of Civil Procedure section 337.15 runs from the substantial completion of services rather than the improvement. (See also *Tech-Bilt, Inc.* v. *Woodward-Clyde & Associates* (1985) 38 Cal.3d 488, 491-2 [213 Cal.Rptr. 256, 698 P.2d 159] [dicta reflecting the same assumption].)

The court was careful to note that its holding in *Valley Circle* did "not create an infinite period of liability on the part of improvers of real property who contract to perform services for a general contractor," and reiterated that "[i]n a direct action for damages or indemnity, a subcontractor may be held liable no more than 10 years after substantial completion of *his* services." (*Valley Circle Estates* v. *VTN Consolidated, Inc., supra,* 33 Cal.3d at p. 614 [italics added].)

We therefore agree with the trial court that the relevant inquiry is into the date of substantial completion of respondent's services, and turn to the evidence presented on that issue.

### III.*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

### IV.

The judgment is affirmed.

Poché, Acting P. J., and Reardon, J., concurred.

Appellant's petition for review by the Supreme Court was denied October 17, 1991.

---

*See footnote, *ante*, page 1038.