[No. C030439. Third Dist. Dec. 8, 1999.]

FNB MORTGAGE CORP. et al., Cross-complainants and Appellants, v. PACIFIC GENERAL GROUP, Cross-defendant and Respondent.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II. B. and D.

1118

COUNSEL

Senn Palumbo Meulemans and Susan D. Hyman for Cross-complainants and Appellants.

Clapp, Moroney, Bellagamba, Davis & Vucinich, Mark T. Guerra and John F. Doyle for Cross-defendant and Respondent.

OPINION

KOLKEY, J.—This action arises from alleged construction defects at a Sacramento apartment complex. The central issue on appeal is whether the 10-year statute of limitations under Code of Civil Procedure section 337.15[1] bars the cross-complaint of FNB Mortgage Corp. and Granite Savings Bank (collectively, FNB) for express contractual indemnity against the developer, cross-defendant Pacific General Group (Pacific General).

Section 337.15 requires that a suit to recover damages for a latent design or construction defect be brought within 10 years of the date of substantial completion of the improvement, regardless of the date of discovery of the defect. Subdivision (c) of that section, however, permits a transactionally related cross-complaint for indemnity to be filed outside the 10-year period if the main action has been brought within the 10-year period.

In this case, the main action, and FNB's cross-complaint, were not brought until after the expiration of the 10-year period. However, FNB contends that the main action was timely filed by virtue of a tolling agreement entered between the plaintiff and FNB, and that alternatively, the limitations period was equitably tolled by reason of Pacific General's promises to repair the defects. The trial court ruled that the action was barred by the statute of limitations, and granted summary judgment in favor of cross-defendant Pacific General.

On appeal, FNB challenges the trial court's determination that its cross-complaint was time-barred; contends that the trial court committed reversible error in denying the parties a second hearing on Pacific General's

---

[1] Unless otherwise designated, all further statutory references are to the Code of Civil Procedure.

summary judgment motion following supplemental briefing; and claims that the trial court erred in denying its request for a continuance to complete discovery before rendering judgment.

In the published portion of our opinion, we hold that:

(1) FNB's tolling agreement with the *plaintiff* does not extend the time to file suit against *Pacific General.*

(2) Section 337.15 is not subject to equitable tolling for repair work. The addition of such a judicially inspired exception would be inconsistent with the statutory scheme, which establishes an outside limit for instituting actions and expressly delineates the specific exceptions to that limitations period. Such an exception would also undermine the purpose of the statute "to protect contractors and other professionals and tradespeople in the construction industry from perpetual exposure to liability for their work." (*Sandy* v. *Superior Court* (1988) 201 Cal.App.3d 1277, 1285 [247 Cal.Rptr. 677].) In short, engrafting a *judicially created* exception onto the existing, *legislatively enacted* exceptions—thereby weakening the statute's specific objective of offering repose—would usurp the Legislature's role of determining policy.

(3) Even if the statute were subject to tolling, Pacific General's purported promises to *plaintiff* that it would repair the defects could not toll the statute of limitations for FNB, since the latter did not rely on any such promises.

We shall accordingly affirm the judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. *The Underlying Litigation*

This action arises from alleged construction defects in a 520-unit Sacramento apartment complex known as Smoketree Gardens (the complex).

In 1982 and 1983, FNB's predecessor and Pacific General entered into written agreements to develop the complex, in which Pacific General agreed to act as developer and construct the complex.[2] These agreements collectively form the basis for FNB's claim for express indemnity against Pacific General. The nature of the contentions on appeal makes it unnecessary to

---

[2]For purposes of this appeal, we assume, as do the parties, that FNB (or one of its predecessors) was the party that entered into the agreements with Pacific General.

discuss the terms of these contracts or their indemnity clauses in further detail.

In or around March 1984, Smoke Tree Investors, Ltd., a limited partnership (hereinafter referred to as the plaintiff), became the owner of the complex. A notice of completion for the complex was filed on August 14, 1984.[3]

Sometime before July 1989, the tennis court surfaces at the complex began to crack. Pacific General retained a geotechnical consultant to assess the problem. That consultant prepared reports addressing the problem, which were dated December 1, 1989, and February 20, 1991. The latter report identified severe "cracking and heaving/blistering throughout most of the [tennis court] pavement area," as well as cracking of Sheetrock and displacement of tile, wall paneling, and cabinetry in several buildings.

Beginning in January 1992, FNB entered into a series of agreements with the plaintiff owner of the complex, which tolled the statute of limitations as to plaintiff's claims against FNB and its subsidiaries until November 30, 1994.

On the day its tolling agreements with FNB expired, plaintiff initiated the instant action, alleging latent defects in the design or construction of significant structural components,[4] and seeking damages under a variety of legal theories (the defects action). Defendants included FNB's predecessors[5] and Pacific General.

B. *FNB's Cross-complaint*

On March 3, 1995, FNB filed a cross-complaint against Pacific General, among others, for, inter alia, negligence, breach of implied warranty, and implied equitable indemnity. Pacific General answered and raised various affirmative defenses, including the statutes of limitations. FNB later added a claim for breach of express indemnity against Pacific General.

---

[3] For the purposes of this appeal, we consider the project to have been substantially completed on August 14, 1984. (§ 337.15, subd. (g).) Although Pacific General contends that final inspections were conducted earlier on the complex (between February 14 and July 9, 1984), whether the project was substantially complete before August 14, 1984, is not material to any issue in this case.

[4] These included the foundations, windows, tile and wall veneers, cabinetry, and tennis courts.

[5] FNB's predecessors were FNS Mortgage Services Corporation and First Nationwide Bank. FNS Mortgage Services Corporation was the predecessor in interest to appellant FNB Mortgage Corp. and was a subsidiary of First Nationwide Bank, the predecessor in interest to appellant Granite Savings Bank.

## C. *Settlement of the Defects Action*

The defects action settled effective March 3, 1997, with FNB and Pacific General each contributing $325,000 to the settlement in consideration of plaintiff's dismissal of the defects action against them. The written "Settlement Agreement and Release" recites that all cross-complaints shall be dismissed, *with the exception of FNB's claim against Pacific General for express indemnity.*

## D. *Pacific General's Motion for Summary Judgment*

Pacific General moved for summary judgment on FNB's cross-complaint on the ground, among others, that the cross-complaint as to Pacific General was barred by the 10-year statute of limitations governing latent construction defects set forth in section 337.15.[6] It argued that (1) on its face, the defects action and the cross-complaint were filed more than 10 years after the

---

[6]Section 337.15 states: "(a) No action may be brought to recover damages from any person, or the surety of a person, who develops real property or performs or furnishes the design, specifications, surveying, planning, supervision, testing, or observation of construction or construction of an improvement to real property more than 10 years after the substantial completion of the development or improvement for any of the following:

"(1) Any latent deficiency in the design, specification, surveying, planning, supervision, or observation of construction or construction of an improvement to, or survey of, real property.

"(2) Injury to property, real or personal, arising out of any such latent deficiency.

"(b) As used in this section, 'latent deficiency' means a deficiency which is not apparent by reasonable inspection.

"(c) As used in this section, 'action' includes an action for indemnity brought against a person arising out of that person's performance or furnishing of services or materials referred to in this section, except that a cross-complaint for indemnity may be filed pursuant to subdivision (b) of Section 428.10 in an action which has been brought within the time period set forth in subdivision (a) of this section.

"(d) Nothing in this section shall be construed as extending the period prescribed by the laws of this state for bringing any action.

"(e) The limitation prescribed by this section shall not be asserted by way of defense by any person in actual possession or the control, as owner, tenant or otherwise, of such an improvement, at the time any deficiency in the improvement constitutes the proximate cause for which it is proposed to bring an action.

"(f) This section shall not apply to actions based on willful misconduct or fraudulent concealment.

"(g) The 10-year period specified in subdivision (a) shall commence upon substantial completion of the improvement, but not later than the date of one of the following, whichever first occurs:

"(1) The date of final inspection by the applicable public agency.

"(2) The date of recordation of a valid notice of completion.

"(3) The date of use or occupation of the improvement.

"(4) One year after termination or cessation of work on the improvement.

"The date of substantial completion shall relate specifically to the performance or furnishing design, specifications, surveying, planning, supervision, testing, observation of

complex was substantially completed, in violation of the 10-year limitation period under section 337.15; (2) FNB's written tolling agreements with plaintiff did not toll the time to file FNB's cross-complaint against Pacific General, as Pacific General was not a party to those agreements; and (3) Pacific General did nothing to toll the statute of limitations.

FNB responded that its cross-complaint against Pacific General was not barred by the 10-year statute of limitations because (1) the defects action was timely filed against FNB (by virtue of its tolling agreements), and consequently, FNB's cross-complaint was timely pursuant to section 337.15, subdivision (c); and (2) Pacific General's investigation of the construction defects between July 1989 and June 1991, and its promises to repair them, induced the plaintiff not to file the defects action for two years, thereby tolling the statute of limitations during that period. In support of the latter assertion, FNB submitted copies of correspondence between Pacific General and the plaintiff's general partner, Continental American Properties, Ltd. (Continental American), concerning (1) Pacific General's retention of a consultant to investigate the defects (particularly the cracking of the tennis court surfaces) and (2) Continental American's requests that Pacific General take action to remedy the defects.

FNB also moved to continue the hearing on the summary judgment motion pursuant to section 437c, subdivision (h), on the ground that the discovery necessary for FNB's response had not been completed, including the depositions of Pacific General's designated "most knowledgeable person," Robert Skiff, and former officers of Pacific General.

A hearing on Pacific General's motion for summary judgment was conducted on February 20, 1998. After entertaining oral argument on the merits of the motion (including on whether Pacific General's actions tolled operation of the statute of limitations), the court granted FNB's request to continue the matter so that it could conduct one additional deposition on the issue of whether Pacific General's conduct tolled the statute of limitations. It also authorized supplemental briefing. Thereafter, the trial court granted FNB's motion to reopen discovery to permit three additional depositions.

In its supplemental opposition to the motion for summary judgment, FNB introduced evidence that during late 1984, a Pacific General employee made repairs to the drainage system at the complex, and reiterated its argument that Pacific General had tolled the 10-year statute of limitations by making

construction or construction services by each profession or trade rendering services to the improvement."

promises to the plaintiff that it would fix the defects. It also requested a further continuance of the hearing because it had not completed the depositions authorized by the trial court.

Without entertaining further oral argument, the trial court granted Pacific General's motion for summary judgment. The court found that "[a]ll issues in this case have been extensively briefed. The dispositive issue of the statute of limitations was addressed in the prior papers[,] argued orally before the Court and was thoroughly briefed in the supplemental papers. Therefore, the Court will not entertain oral argument."

The court then rejected FNB's assertion that Pacific General was estopped from asserting the statute of limitations by reason of its alleged representations between 1984 and 1991 that it would make repairs, ruling that "once [Pacific General] made repairs in December, 1984, any latent defects were then patent" and thus subject to the four-year statute of limitations applicable to patent defects. It also found that FNB had proffered "no competent" evidence that Pacific General tolled the statute of limitations by "ma[king] certain representations regarding its investigations of the tennis courts." Finally, the trial court held that the rule embodied in section 337.15, subdivisions (a) and (c)—which permits a cross-complaint for indemnity to be filed beyond the 10-year statute of limitations in those cases where the underlying complaint was timely filed—did not apply here because "the [c]omplaint was not timely." It concluded that FNB had presented "no authority for its suggestion that its [tolling] agreement with Plaintiff should affect the rights of [Pacific General] who is not a party or a beneficiary of that agreement."

## II. DISCUSSION

### A. *Standard of Review*

■ A motion for summary judgment is properly granted if the papers submitted show there is no triable issue as to any material fact and that the moving party is entitled to judgment as a matter of law. (§ 437c, subd. (c).) A defendant is entitled to summary judgment if a necessary element of the plaintiff's cause of action cannot be established or if there exists a complete defense to the cause of action. (§ 437c, subd. (o)(2).)

■ "Because the trial court's determination is one of law based upon the papers submitted, the appellate court must make its own independent determination regarding the construction and effect of the supporting and opposing papers. We apply the same three-step analysis required of the trial court.

We begin by identifying the issues framed by the pleadings since it is these allegations to which the motion must respond. We then determine whether the moving party's showing has established facts which justify a judgment in movant's favor. When a summary judgment motion prima facie justifies a judgment, the final step is to determine whether the opposition demonstrates the existence of a triable, material factual issue." (*Hernandez* v. *Modesto Portuguese Pentecost Assn.* (1995) 40 Cal.App.4th 1274, 1279 [48 Cal.Rptr.2d 229].)

"The trial court's stated reasons supporting its ruling, however, do not bind this court," as we review "the ruling, not its rationale." (*Szadolci* v. *Hollywood Park Operating Co.* (1993) 14 Cal.App.4th 16, 19 [17 Cal.Rptr.2d 356].)

■ "Resolution of a statute of limitations defense normally is a factual question for the trier of fact. [Citation.] Summary judgment is proper, however, if the court can draw only one legitimate inference from uncontradicted evidence regarding the limitations question." (*City of San Diego* v. *U.S. Gypsum Co.* (1994) 30 Cal.App.4th 575, 582 [35 Cal.Rptr.2d 876].)

B. *The Court's Denial of Additional Oral Argument Was Not Error**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

C. *The Cross-complaint Is Barred by the Statutes of Limitations*

■ We now turn to the merits of FNB's contention that the trial court erred in concluding that its cross-complaint was barred by the statute of limitations.

1. *The 10-year Limitations Period Under Section 337.15*

In 1971, the Legislature enacted section 337.15. (*Regents of University of California* v. *Hartford Acc. & Indem. Co.* (1978) 21 Cal.3d 624, 630 [147 Cal.Rptr. 486, 581 P.2d 197] (*Regents of University of California*).) That section provides in part that "[n]o action may be brought to recover damages from any person . . . who develops real property or performs or furnishes the design, specifications, surveying, planning, supervision, testing, or observation of construction or construction of an improvement to real property more than 10 years after the substantial completion of the development or improvement for . . . [¶] . . . [a]ny latent deficiency in the design, specification, surveying, planning, supervision, or observation of construction or construction of an improvement to . . . real property." (§ 337.15, subd. (a).)

*See footnote, *ante*, page 1116.

As used in that section " 'action' includes an action for indemnity brought against a person arising out of that person's performance or furnishing of services or materials referred to in this section . . . ." (§ 337.15, subd. (c).) Actions for both contractual and implied indemnity are covered. (*Regents of University of California, supra,* 21 Cal.3d at p. 639, fn. 9; *Grange Debris Box & Wrecking Co.* v. *Superior Court* (1993) 16 Cal.App.4th 1349, 1359 [20 Cal.Rptr.2d 515].)

The 10-year period specified in the statute runs from the earlier of several dates, which include the "date of recordation of a valid notice of completion" (which in this case was August 14, 1984). Specifically, subdivision (g) of section 337.15 provides: "The 10-year period specified in subdivision (a) shall commence upon substantial completion of the improvement, but not later than the date of one of the following, whichever first occurs: [¶] . . . [¶] . . . (2) The date of recordation of a valid notice of completion."

This "10-year statute is the *outside* limit for an action against a contractor for latent defects." (*A & B Painting & Drywall, Inc.* v. *Superior Court* (1994) 25 Cal.App.4th 349, 355 [30 Cal.Rptr.2d 418], original italics; accord, *North Coast Business Park* v. *Nielsen Construction Co.* (1993) 17 Cal.App.4th 22, 27 [21 Cal.Rptr.2d 104].) As the California Supreme Court has stated, "[s]ection 337.15, read together with Code of Civil Procedure sections 337 and 338, enacts . . . a two-step limitation: actions founded upon a latent defect in the development of real property must be filed within three or four years of discovery, depending on whether the action rests on breach of warranty or negligence, but in any case within [10] years of the date of substantial completion of the improvement." (*Regents of University of California, supra,* 21 Cal.3d at p. 641.)

The Court of Appeal in *North Coast Business Park* v. *Nielsen Construction Co., supra,* 17 Cal.App.4th at page 27, has explained more fully: "When a defect is latent (i.e., not apparent from a reasonable inspection [citation]), sections 337 and 338 begin to run only after the damage is sufficiently appreciable to give a reasonable man notice that he has a duty to pursue his remedies. [Citation.] However, section 337.15 imposes an absolute 10-year bar, based on the date of 'substantial completion,' regardless of discovery. [Citation.] The interplay between these statutes sets up a two-step process: (1) actions for a latent defect must be filed within three years (§ 338) or four years (§ 337) of discovery, but (2) in any event must be filed within [10] years (§ 337.15) of substantial completion." (*Ibid.*)

The parties mistakenly assume that the shorter statutes of limitations that permit accrual of a cause of action for latent construction defects upon

discovery apply to a cross-complaint for indemnity. They do not.[10] (*Valley Circle Estates* v. *VTN Consolidated, Inc.* (1983) 33 Cal.3d 604, 611-612 [189 Cal.Rptr. 871, 659 P.2d 1160].) ▮ " 'The indemnity action, unlike the plaintiff's claim, does not accrue for statute of limitations purposes when the original accident occurs, but instead accrues at the time the tort defendant pays a judgment or settlement as to which he is entitled to indemnity.' " (*Id.* at pp. 611-613, fn. 6, and authorities cited therein.)

However, although unaffected by the "discovery rule," the right of a defendant to cross-complain for indemnity is limited by section 337.15: "Actions barred after 10 years encompass both direct actions by the consumer against the contributor (§ 337.15, subd. (a)) and actions for indemnity against such contributor based upon his role in the project (§ 337.15, subd. (c)), subject to the one exception described below. This latter provision of section 337.15, subdivision (c) thus alters the rule ordinarily applicable to statutes of limitations on indemnity actions: Generally, an indemnity action does not *accrue*, and hence the statute of limitations does not start, until the prospective indemnitee has paid the judgment or settlement. Section 337.15, subdivision (c) alters this rule, barring independent actions for indemnity unless brought within 10 years after substantial completion of the contributor's work, even though the indemnitee has not yet paid on the judgment." (*Time for Living, Inc.* v. *Guy Hatfield Homes/All American Development Co.* (1991) 230 Cal.App.3d 30, 36 [280 Cal.Rptr. 904], fns. omitted.)

▮ The establishment of an outer limit on liability for land development activities was intended "to protect contractors and other professionals and tradespeople in the construction industry from perpetual exposure to liability for their work. [Citation.] The statute reflects a legislative concern that 'expanding concepts of liability could imperil the construction industry unless a statute of limitations was enacted.' [Citation.] Such concerns legitimately include the prohibitive cost of insurance against a perpetual and never ending risk." (*Sandy* v. *Superior Court, supra,* 201 Cal.App.3d at p. 1285; see *Regents of University of California, supra,* 21 Cal.3d at p. 633, fn. 2.)

Section 337.15 provides one exception, however, to the 10-year bar on actions for indemnity: Subdivision (c) permits an indemnity cross-claim to be filed more than 10 years after the alleged indemnitor has finished its work, if the cross-complaint is filed in a transactionally related action which was timely filed under the statute against the prospective indemnitee. (See *Valley Circle Estates* v. *VTN Consolidated, Inc., supra,* 33 Cal.3d at p.

---

[10]The trial court's conclusion to the contrary was error.

609; *Fleck* v. *Bollinger Home Corp.* (1997) 54 Cal.App.4th 926, 931-932 [63 Cal.Rptr.2d 407].)

Subdivision (c) of section 337.15 provides: "As used in this section, 'action' includes an action for indemnity brought against a person arising out of that person's performance or furnishing of services or materials referred to in this section, *except that a cross-complaint for indemnity may be filed pursuant to subdivision (b) of Section 428.10 in an action which has been brought within the time period set forth in subdivision (a) of this section.*" (Italics added.)

Section 428.10, subdivision (b), in turn, provides that a party against whom a cause of action has been asserted in a complaint may file a cross-complaint setting forth "[a]ny cause of action he has against a person alleged to be liable thereon, whether or not such person is already a party to the action, if the cause of action asserted in his cross-complaint (1) arises out of the same transaction, occurrence, or series of transactions or occurrences as the cause brought against him or (2) asserts a claim, right, or interest in the property or controversy which is the subject of the cause brought against him."

Thus, the exception in section 337.15, subdivision (c) applies if the main action alleging a latent design or construction defect was brought within 10 years, and the cross-complaint for indemnity is transactionally related to the main action. (*Time for Living, Inc.* v. *Guy Hatfield Homes/All American Development Co., supra,* 230 Cal.App.3d at pp. 38-39; *Sandy* v. *Superior Court, supra,* 201 Cal.App.3d at pp. 1282-1284.)

As stated in *Valley Circle Estates* v. *VTN Consolidated, Inc., supra,* 33 Cal.3d at page 609, "We read this language to mean that a cross-complaint for indemnity may be filed more than 10 years after the alleged indemnitor has substantially completed his services, provided that the under-lying action was itself brought within the 10-year limitation period of the statute. [¶] Thus, a defendant timely sued under section 337.15, subdivision (a), may file under subdivision (c) a cross-complaint for indemnity against a third party who could not otherwise be reached by a direct action for indemnity filed by the defendant, or by a direct suit for damages filed by the plaintiff."

2. *FNB's Tolling Agreement With the Plaintiff Cannot Extend the 10-year Period for Purposes of Its Cross-complaint*

It is undisputed that FNB's cross-complaint for indemnity (origi-nally filed in March 1995) was filed more than 10 years after the project was

substantially complete in August 1984. It is also undisputed that the defects action (filed on November 30, 1994) was filed more than 10 years after the project was substantially complete. Thus, FNB's cross-complaint would appear to fail to come within the exception under subdivision (c) of section 337.15, which requires that the underlying action be filed within the 10-year period specified in subdivision (a).

Nonetheless, FNB insists that its cross-complaint is not time-barred because its tolling agreements with the plaintiff rendered the defects action against it timely under section 337.15. However, FNB has proffered no authority for this proposition, and we are aware of none.

The statutory language plainly precludes FNB's interpretation. Subdivision (a) of section 337.15 bars an action to recover damages brought more than 10 years after substantial completion of the development or improvement. Subdivision (c) only grants an exception for a cross-action for indemnity "in an action which has been brought within the time period set forth in subdivision (a) of this section." Since the defects action against FNB was not filed "within the time period set forth in subdivision (a) of this section," i.e., 10 years after the substantial completion of the development or improvement, subdivision (c) does not, on its face, grant an exception to FNB.

Interpreting the exception under subdivision (c) to allow cross-complaints for indemnity only where the underlying action was filed within the 10-year period not only adheres to the language of the statute, but serves the legislative purpose behind section 337.15 by ensuring "a finite, predictable period of exposure to liability for completed work. Ten years after completion of a work of construction, if no complaint is yet on file against any of the participants, they may all assume their exposure has ended. Under the contrary interpretation, this repose could never occur . . . . Hardy would be the person who ventured into the construction industry under such conditions, assuming he could get liability insurance at all." (*Sandy* v. *Superior Court, supra*, 201 Cal.App.3d at p. 1286; accord, *Industrial Risk Insurers* v. *Rust Engineering Co.* (1991) 232 Cal.App.3d 1038, 1043 [283 Cal.Rptr. 873].)

Analogous authority supports our conclusion. For example, although subdivision (e) of section 337.15 provides a separate exception to the 10-year limitations period when the defendant is in possession or control of the property, that exception does not extend that defendant's right to bring a cross-complaint for indemnity when the main action against it is brought beyond the 10-year period: "The language of subdivision (c), provi[d]ing the

exception for cross-complaints for indemnity . . . prescribes that the cross-complaint is deemed timely only if the principal action has been filed within 'the time period set forth in subdivision (a) of this section,' i.e., the 10 year period. If a complaint against [a cross-complainant] were not timely as having been filed within 10 years, but rather, were to be held timely only by virtue of subdivision (e) based on actual possession or control, the statute would provide no exception for one in [its] shoes to cross-complain for indemnity beyond the 10 year period." (*Sandy* v. *Superior Court, supra,* 201 Cal.App.3d at p. 1284; *Grange Debris Box & Wrecking Co.* v. *Superior Court, supra,* 16 Cal.App.4th at pp. 1355-1357.) Thus, under the reasoning of *Sandy* v. *Superior Court,* even if the original plaintiff escapes the statute of limitations in its action against the cross-complainant, the cross-complainant is not excused from having to bring its cross-complaint within the limitations period established by section 337.15, subdivision (c).

### 3. *Section 337.15 Is Not Subject to Equitable Tolling for Repairs*

FNB asserts that its cross-complaint was "tolled" by Pacific General's implicit promises to make repairs to the tennis courts.

However, with one notable exception (*Cascade Gardens Homeowners Assn.* v. *McKellar & Associates* (1987) 194 Cal.App.3d 1252 [240 Cal.Rptr. 113] (*Cascade Gardens*)), the Courts of Appeal have stated that "[t]he 10-year statute is the *outside* limit for an action against a contractor for latent defects." (*A & B Painting & Drywall, Inc.* v. *Superior Court, supra,* 25 Cal.App.4th at p. 355, original italics; accord, *North Coast Business Park* v. *Nielsen Construction Co., supra,* 17 Cal.App.4th at p. 27; *Sandy* v. *Superior Court, supra,* 201 Cal.App.3d at pp. 1284-1286.)

Moreover, the exception—*Cascade Gardens, supra,* 194 Cal.App.3d 1252—premised its ruling that repair efforts toll section 337.15 on cases that predated that section and which grafted that tolling doctrine onto *other* statutes of limitations. In doing so, the court in *Cascade Gardens* ignored the fact that section 337.15 is different from other limitations statutes since it is meant to establish an *outside* limitations period.

Admittedly, the Supreme Court in *Regents of University of California, supra,* 21 Cal.3d at page 642, stated that it viewed "section 337.15 as an ordinary statute of limitations, subject to the same rules, including the rule denying exoneration to the surety, as other statutes of limitations"—a statement upon which *Cascade Gardens, supra,* 194 Cal.App.3d at page 1256, relied in ruling that repair efforts toll section 337.15. However, the high court's remark was made in the context of the majority's rejection of the

dissent's argument that ". . . section 337.15 is not an ordinary procedural statute of limitation, but a substantive limit upon the plaintiff's cause of action" (21 Cal.3d at p. 640), by which the causal connection between a defect and an injury would no longer receive legal recognition after the passage of the limitations period. (21 Cal.3d at pp. 640-642.) As a result, the dissent argued, even though a construction surety was not among the parties then identified in the statute which could claim the protection of section 337.15 (it is now),[11] the statute acted as a substantive limitation, barring a plaintiff from proceeding against the surety on the performance bond of a contractor, where the statute barred the action against the contractor. The majority rejected the argument. It reasoned that since section 337.15 expressly excluded certain parties from its 10-year limitation (such as owners and tenants of the improvement at the time the deficiency caused damage), it "construct[ed] a time limitation on the cause of action, not the obliteration of a cause of action." (21 Cal.3d at p. 642.) It then concluded: "We therefore view section 337.15 as an ordinary statute of limitations, subject to the same rules, including the rule denying exoneration to the surety, as other statutes of limitations." (21 Cal.3d at p. 642.) Accordingly, *Regents of University of California* did not address, and is not authority for, the proposition that section 337.15 is a statute of limitation subject to equitable tolling. "Language used in any opinion is of course to be understood in . . . light of the facts and the issue . . . before the court, and an opinion is not authority for a proposition not therein considered." (*Ginns* v. *Savage* (1964) 61 Cal.2d 520, 524, fn. 2 [39 Cal.Rptr. 377, 393 P.2d 689].)

Instead, establishing a judicially created exception for repairs to the 10-year period under section 337.15 would rewrite the statute in a way that undermines its statutory purpose and violates a number of established rules of statutory construction.

First, establishing a judicially created exception would run afoul of the purpose of establishing an outer limitations period "to protect contractors and other professionals and tradespeople in the construction industry from perpetual exposure to liability for their work." (*Sandy* v. *Superior Court, supra,* 201 Cal.App.3d at p. 1285.) "The words of [a] statute must be construed in context, keeping in mind the statutory purpose . . . ." (*Dyna-Med, Inc.* v. *Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1387 [241 Cal.Rptr. 67, 743 P.2d 1323].) It follows that courts should not *add* language to a statute that runs afoul of its statutory purpose. In this case, equitable tolling would permit the very dangers the statute was meant to

---

[11]A 1979 amendment to the statute added "surety of a person" to the parties covered in subdivision (a) of section 337.15. (See Stats. 1979, ch. 571, § 1, p. 1797.)

avoid: An unsuspecting subcontractor could be sued for indemnity, long after the statute's 10-year limitations period had passed, and despite the absence of any action alleging defects within the 10-year period, simply because the indemnitee (the subsequent cross-complainant) was deemed to have tolled the 10-year period and was thus subject to subsequent suit.

Second, engrafting a judicially inspired exception onto a statute that already has carefully delineated, legislatively enacted exceptions to the 10-year period would run afoul of the rule, *expressio unius est exclusio alterius*: "An enumeration of exceptions from the operation of a statute indicates that it should apply to all cases not specifically enumerated." (2A Sutherland, Statutory Construction (5th ed. 1992) § 47.11, p. 165.) Although section 337.15 establishes a 10-year limitations period for damage claims for any latent deficiency, it also establishes several exceptions, such as for cross-complaints for indemnity brought in timely filed and transactionally related actions (subd. (c)), actions against persons, such as owners or tenants, in actual possession or control of the improvement at the time the deficiency caused the damage (subd. (e)), and actions based on willful misconduct or fraudulent concealment (subd. (f)).[12] The legislative delineation of specific exceptions to a lengthy, outside limitations period suggests the rejection of other exceptions.

■ "Under the familiar rule of construction, *expressio unius est exclusio alterius*, where exceptions to a general rule are specified by statute, other exceptions are not to be implied or presumed," absent "a discernible and contrary legislative intent." (*Wildlife Alive* v. *Chickering* (1976) 18 Cal.3d 190, 195 [132 Cal.Rptr. 377, 553 P.2d 537]; accord, *Andrus* v. *Glover Construction Co.* (1980) 446 U.S. 608, 616-617 [100 S.Ct. 1905, 1910, 64 L.Ed.2d 548, 557] ["Where Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent"]; 2A Sutherland, Statutory Construction, *supra*, § 47.11, at p. 165.) No contrary legislative intent is discernible here, and indeed the statute's express exception for fraudulent concealment—a well-established ground for equitable tolling (*Bernson* v. *Browning-Ferris Industries* (1994) 7 Cal.4th 926, 931 [30 Cal.Rptr.2d 440, 873 P.2d 613])—suggests the rejection of other such grounds.

■ Third, "[e]quitable tolling is not permissible where it is inconsistent with the text of the relevant statute." (*United States* v. *Beggerly* (1998) 524 U.S. 38, 48 [118 S.Ct. 1862, 1868, 141 L.Ed.2d 32, 41].) In this case, the introduction of an additional, equitably inspired exception for repairs is

[12]See footnote 6, *ante,* for the text of the exceptions.

inconsistent with the legislative enactment of an outer limitations period, which is meant to bar actions not barred by shorter limitations periods triggered by discovery of the defect.

In *United States* v. *Beggerly, supra,* 524 U.S. 38, the United States Supreme Court ruled that equitable tolling was inconsistent with the 12-year statute of limitations under the Quiet Title Act—which begins to run from the date the plaintiff knows or should have known about the claim of the United States—because the statute already allowed for some tolling, the limitations period was already generous, and the act dealt with land ownership, which requires certainty. The same reasoning, based on the generous limitations period here and the need for repose from continuing exposure to liability in the construction industry, applies here.

Similarly, in *Lampf* v. *Gilbertson* (1991) 501 U.S. 350 [111 S.Ct. 2773, 115 L.Ed.2d 321], the United States Supreme Court ruled that a statute of limitations which required that actions be brought within one year after discovery of the facts constituting the cause of action and within three years after such cause of action accrued (15 U.S.C. § 78i(e)) was "fundamentally inconsistent" with an equitable tolling doctrine because the "1-year period, by its terms, begins after discovery of the facts constituting the violation, making tolling unnecessary" and the "3-year limit is a period of repose inconsistent with tolling," since it imposes an outside limit. (501 U.S. at p. 363 [111 S.Ct. at p. 2782].)

Likewise, here, suits for latent construction defects are subject to both the shorter limitations statutes that are triggered by discovery, and the 10-year limit. Thus, like *Lampf,* recognition of an equitable tolling doctrine here would be fundamentally inconsistent with an outside limitations period that is intended to act as a period of repose.

Accordingly, the role and purpose of the statute, its text, and rules of statutory construction all converge to support the conclusion that section 337.15 is not subject to equitable tolling for repairs. Indeed, for the courts to add a judicially inspired exception to the express exceptions already approved by the Legislature—in conflict with the purpose of the statute— would usurp the Legislature's role in determining policy.

4. *Alternatively, Pacific General's Conduct Toward Plaintiff Does Not Justify Tolling to Benefit FNB*

Even if we were to accept the contrary ruling in *Cascade Gardens, supra,* 194 Cal.App.3d at page 1256, that section 337.15 "is subject to the same

rules which toll other statutes of limitations" and that it may be tolled during a period of repair, Pacific General's investigation of the construction defects—and purported promises to repair them—could have no effect on the timeliness of FNB's cross-complaint against it.

Whether or not Pacific General's actions "induced [p]laintiff's reliance and resulted in the belated filing of the [plaintiff's] complaint," as alleged by FNB (and we need not reach the issue whether they did), such actions would not toll the period for filing FNB's cross-complaint against Pacific General. Such tolling is based on estoppel principles that are personal to the party relying on the conduct that justifies the tolling: "Tolling during a period of repairs rests upon the same basis as does an estoppel to assert the statute of limitations, i.e., reliance by the plaintiff upon the words or actions of the defendant that repairs will be made." (*A & B Painting & Drywall, Inc.* v. *Superior Court, supra,* 25 Cal.App.4th at p. 355.) ■ "A defendant will be estopped to invoke the statute of limitations where there has been 'some conduct by the defendant, relied on by the plaintiff, which induces the belated filing of the action.' " (*Shaffer* v. *Debbas* (1993) 17 Cal.App.4th 33, 43 [21 Cal.Rptr.2d 110].)

■ In this case, Pacific General did not do anything that induced FNB to delay the filing of its cross-complaint. To the contrary, far from being lulled by the actions of Pacific General, FNB itself delayed its need to file a cross-complaint for indemnification by agreeing to extend the time for the plaintiff to bring its action against it. This decision by FNB created the prospect that FNB might be subsequently liable for damages when and if plaintiff brought and prosecuted its suit, and that FNB might later need to seek indemnification. It was in FNB's control whether plaintiff's action was filed within the 10-year period, and it chose to extend the time for plaintiff, while doing nothing to protect its right to bring its own claim for indemnity. A contractor or subcontractor, whether suspecting or unsuspecting, does not lose the protections of the 10-year limitations period under section 337.15 because of the conduct of *another* party that extends the time for suit against *itself.*

Our result is consistent with the rules regarding agreements to extend or waive statutes of limitations. Although parties certainly may contract to extend the limitations period (e.g., *Hambrecht & Quist Venture Partners* v. *American Medical Internat., Inc.* (1995) 38 Cal.App.4th 1532, 1547 [46 Cal.Rptr.2d 33]), it is well established that such an agreement has no effect on other potential parties not in privity. (§ 360.5 [a waiver of the statute of limitations is to be "signed by the person obligated"]; see 3 Witkin, Cal. Procedure (4th ed. 1996) Actions, § 436, p. 547.)

Accordingly, because section 337.15 required that the defects action against FNB be filed within the 10-year statutory period and it was not, because equitable tolling for repairs is inconsistent with the 10-year limitations period under section 337.15, and because even if section 337.15 could be tolled, Pacific General's purported conduct toward *plaintiff* did not induce any reliance on the part of FNB that could toll the limitations period for *FNB's* cross-complaint, the cross-complaint is barred.

D. *The Trial Court Properly Denied a Further Continuance*\*

. . . . . . . . . . . . . . . . . . . . . . . . .

DISPOSITION

The judgment is affirmed. Respondent shall recover its costs on appeal.

Sims, Acting P. J., and Callahan, J., concurred.

---

\*See footnote, *ante*, page 1116.