638

[No. A088522. First Dist., Div. Three. May 23, 2001.]

ROGER E. SMITH, INC., Plaintiff and Appellant, v.
SHN CONSULTING ENGINEERS & GEOLOGISTS, INC., et al.,
Defendants and Respondents.

640

## COUNSEL

McInerney & Dillon, Robert L. Leslie, Timothy L. McInerney and Alexander Bannon for Plaintiffs and Appellants.

Hanson, Bridgett, Marcus, Vlahos & Rudy, Andrew G. Giacomini and Thomas E. McGrath for Defendant and Respondent Robert J. Gianelli Architects.

Law Offices of Harr & Arthofer, Borton, Petrini & Conron and Kenneth B. Arthofer for Defendant and Respondent SHN Consulting Engineers & Geologists, Inc.

## OPINION

**PARRILLI, J.**—Which statute of limitations applies to a general contractor's claims against an architect and construction manager for economic losses sustained due to their alleged professional negligence during construction? Instead of the two-year statute governing claims for breach of an oral contract (Code Civ. Proc., § 339, subd. 1), the general contractor in this case urges us to apply the four-year statute of limitations for patent deficiencies in construction (Code Civ. Proc., § 337.1). We conclude that Code of Civil Procedure section 337.1 does not encompass such claims and affirm the summary judgment entered in the trial court.

### BACKGROUND

On October 19, 1993, Roger E. Smith, Inc., doing business as Resco Construction Company (Resco), contracted with the County of Humboldt (County) to construct a library. The County retained Robert J. Gianelli Architects (Gianelli) as the architect on the project and SHN Consulting Engineers & Geologists, Inc. (SHN) as the construction manager. During construction, Resco encountered delays and increased costs due to errors in Gianelli's plans and specifications and SHN's failure to coordinate and inspect the project in a competent and timely manner. The County deemed construction complete, and recorded a notice of completion, on November 28, 1995.

On December 19, 1995, SHN received a letter from the president of Resco stating that Resco had been "severely damaged" and intended to submit a claim with the County for extra compensation on the project. Resco did so the next day. A month later, on January 19, 1996, Resco served SHN with a formal claim seeking over $1 million for losses incurred on the project. The County rejected Resco's claim on February 8, 1996, and Resco filed suit against the County for breach of contract on July 19, 1996.

On December 31, 1997, after the trial court dismissed Resco's lawsuit against the County, but while the case was pending on appeal, Resco filed a separate action in Napa County Superior Court. Resco alleged that the professional negligence of SHN and Gianelli had caused "increased costs, schedule impact and loss of profit." This action was later transferred to Humboldt County Superior Court and consolidated with Resco's action against the County (following our reversal of summary judgment in favor of the County and remittitur). SHN and Gianelli moved for summary judgment, claiming Resco's complaint against them was time-barred by Code of Civil Procedure section 339, subdivision 1.[1] The court granted the motion.

### DISCUSSION

■ We review a grant of summary judgment de novo, examining the facts presented to the trial court and independently determining their effect as a matter of law. (*Stratton v. First Nat. Life Ins. Co.* (1989) 210 Cal.App.3d 1071, 1083 [258 Cal.Rptr. 721].) Our analysis is well settled: first, we identify issues framed by the pleadings; second, we determine whether the moving party has established facts sufficient to negate the claim and justify judgment as a matter of law; and third, when a motion prima facie justifies judgment, we determine whether the opposition demonstrates the existence of a triable issue of material fact. (*Ojavan Investors, Inc. v. California Coastal Com.* (1997) 54 Cal.App.4th 373, 385 [62 Cal.Rptr.2d 803]; *AARTS Productions, Inc. v. Crocker Nat. Bank* (1986) 179 Cal.App.3d 1061, 1064-1066 [225 Cal.Rptr. 203].)

### I. *The Applicable Statute of Limitations.*

■ Here, as in their motion below, respondents contend Resco's claims are governed by section 339, subdivision 1, which specifies a two-year period of limitations for any action "upon a contract, obligation or liability not founded upon an instrument of writing." This statute has been applied to claims for professional negligence. (*Slavin v. Trout* (1993) 18 Cal.App.4th

---

[1] All statutory references are to the Code of Civil Procedure unless otherwise indicated.

1536, 1539 [23 Cal.Rptr.2d 219].) Resco does not challenge the applicability of section 339, subdivision 1 to professional negligence claims in general, nor does Resco dispute that its claims seek recovery for professional negligence. Instead, Resco argues that a more specific statute of limitations applies when such claims arise in the context of a construction project. Resco relies on section 337.1, which addresses claims for injury arising from patent defects in construction, to contend it had four years from the date of the project's completion to sue SHN and Gianelli.

Section 337.1 provides, in relevant part:

"(a) Except as otherwise provided in this section, no action shall be brought to recover damages from any person performing or furnishing the design, specifications, surveying, planning, supervision or observation of construction or construction of an improvement to real property more than four years after the substantial completion of such improvement for any of the following:

"(1) Any patent deficiency in the design, specifications, surveying, planning, supervision or observation of construction or construction of an improvement to, or survey of, real property;

"(2) Injury to property, real or personal, arising out of any such patent deficiency; . . . [¶] . . . [¶]

"(c) Nothing in this section shall be construed as extending the period prescribed by the laws of this state for the bringing of any action. [¶] . . . [¶]

"(e) As used in this section, 'patent deficiency' means a deficiency which is apparent by reasonable inspection."

A. *Section 337.1 Does Not Apply Before Substantial Completion.*

We consider first whether the Legislature intended section 337.1 to provide the limitations period for claims alleging economic losses incurred in the course of construction. The statute addresses claims of injury from a patent defect, which has been defined as " 'one which can be discovered by such an inspection as would be made in the exercise of ordinary care and prudence. [Citations.] This is contrasted with a latent defect, one which is hidden and which would not be discovered by a reasonably careful inspection. [Citations.]' " (*Preston v. Goldman* (1986) 42 Cal.3d 108, 123 [227 Cal.Rptr. 817, 720 P.2d 476], quoting *Wagner v. State of California* (1978) 86 Cal.App.3d 922, 927 [150 Cal.Rptr. 489].)

Courts interpreting section 337.1 and the latent-defect statute, section 337.15, have generally treated the words "defect" and "deficiency" as synonymous. (See *Tomko Woll Group Architects, Inc. v. Superior Court* (1996) 46 Cal.App.4th 1326, 1332, fn. 2 [54 Cal.Rptr.2d 300] (*Tomko Woll*).) However, Resco points out that "deficiency" may encompass a broader range of professional shortcomings than "defect." Resco contends the express language of the statute supports its application to claims among disgruntled contractors for economic loss, because section 337.1 declares it applies to all actions alleging injury due to patent deficiencies "in the design, specifications . . . planning [and] supervision" of a construction project (§ 337.1, subd. (a)(1)).

This argument was rejected under similar facts in *Kralow Co. v. Sully-Miller Contracting Co.* (1985) 168 Cal.App.3d 1029 [214 Cal.Rptr. 630] (*Kralow*). In *Kralow*, a developer, Western States, cross-complained against a contractor and subcontractor for alleged "patent deficiencies," such as "improper soil compaction" and inadequate staffing and project supervision. (*Id.* at pp. 1031-1032.) Western States claimed an array of economic damages, including: direct and indirect construction costs; taxes, insurance and other incidental costs; loss of income; and loss of profits in other transactions due to impaired credit. (*Id.* at p. 1032.) On a motion for partial summary judgment, the trial court rejected the developer's argument that section 337.1 applied and found the claims time-barred under the two-year limitations period of section 339, subdivision 1. (168 Cal.App.3d at pp. 1032-1033.) The Fourth District Court of Appeal, Division Three affirmed, stating its belief the Legislature intended section 337.1 to apply to causes of action based on patent deficiencies "existing upon substantial completion of a project." (168 Cal.App.3d at p. 1035.) Because Western States admittedly did not seek damages for patent construction defects that still existed upon completion of the project, its claims did not fall within the purview of section 337.1. (168 Cal.App.3d at p. 1035.)

*Kralow* is indistinguishable from the present case on its facts.[2] Nevertheless, Resco argues the case was wrongly decided. Instead, Resco urges us to follow a seemingly contrary holding from Division Four of the First District Court of Appeal in *Nicholson-Brown, Inc. v. City of San Jose* (1976) 62 Cal.App.3d 526 [133 Cal.Rptr. 159] (*Nicholson-Brown*), disapproved on other grounds in *Bullis v. Security Pac. Nat. Bank* (1978) 21 Cal.3d 801, 815, fn. 18 [148 Cal.Rptr. 22, 582 P.2d 109, 7 A.L.R.4th 642].

---

[2]Resco is incorrect when it asserts the developer in *Kralow* "was seeking recovery for delay damages only." Like Resco, Western States pursued additional construction costs as well as damages incident to delay. (*Kralow, supra,* 168 Cal.App.3d at p. 1032.)

In *Nicholson-Brown*, a general contractor began construction on a police administration building under a contract with the City of San Jose. The city had retained Welton Beckett as the project's architect. During construction, problems developed concerning the exterior concrete finish, which led to several departures from the original plans and specifications. On November 26, 1968, Welton Beckett suspended work on the exterior concrete finish at the city's direction. On February 4, 1969, the general contractor filed a claim with the city alleging damages caused by suspension of the exterior finish work and changes in the project's plans and specifications. After extended negotiations with the city, the general contractor eventually filed suit against the city and the architect on December 8, 1970. (*Nicholson-Brown, supra*, 62 Cal.App.3d at pp. 530-531.)

On appeal from a judgment in favor of the general contractor, the architect contended the claims against it should have been barred by the two-year statute of limitations in section 339, subdivision 1. The appellate court observed that "[a]s a general rule" section 339 applies to claims of negligent performance of professional services; however, the court concluded section 337.1 "deals more specifically with the present case." (*Nicholson-Brown, supra*, 62 Cal.App.3d at p. 532.) Relying solely on statutory language stating that section 337.1 applies to claims alleging patent deficiency "in the design, specifications, surveying, planning, supervision or observation of construction or construction," the court concluded "the four-year limitation of section 337.1 rather than the two-year limitation of section 339, subdivision 1, applies to cases of architectural malpractice." (62 Cal.App.3d at p. 533.)

Resco reads this statement broadly to mean that all claims for negligent design, planning or supervision are governed by section 337.1, regardless of whether the alleged patent deficiencies exist when construction reaches substantial completion. But *Kralow* expressly rejected this broad interpretation of *Nicholson-Brown*: "Western States argues *Nicholson-Brown* supports its position that section 337.1 applies to all claims arising from patently deficient construction work, regardless of the theory of recovery. However, the facts in *Nicholson-Brown* are ambiguous at best. In that case, Welton Beckett's work on the concrete finish of the building was suspended; however, it is unclear whether such work was ever resumed. Therefore it is impossible to determine whether Nicholson-Brown was suing for patent deficiencies in existence upon substantial completion as well as additional costs as a result of the suspension and the changes in the plans and specifications for the building, or whether Nicholson-Brown was suing only for additional costs as a result of the suspension and changes in the plans." (*Kralow, supra*, 168 Cal.App.3d at p. 1035.) In other words, the parties in

*Nicholson-Brown* might have deemed the construction project substantially complete despite an unfinished, and patently deficient, exterior finish. If this is what happened, the general contractor's claims would have concerned patent deficiencies that still existed upon substantial completion.[3]

We agree with the *Kralow* court that these ambiguous facts make *Nicholson-Brown* too shaky a precedent to support an extension of section 337.1 to claims based on deficiencies that have been resolved by the time of substantial completion. To the extent *Nicholson-Brown* may have held otherwise, *Kralow* specifically declined to follow it. (*Kralow, supra*, 168 Cal.App.3d at p. 1035.) In fact, it appears no published decision has followed *Nicholson-Brown* on this point.

*Kralow*'s conclusion that section 337.1 applies only to claims arising from patent deficiencies that exist upon substantial completion also finds support in the line of cases holding the limitations period of section 337.1 begins to run from the date of substantial completion. (See *Tomko Woll, supra*, 46 Cal.App.4th at pp. 1334-1337 [§ 337.1 begins to run upon substantial completion of a project regardless of when a patent defect is discovered or causes injury]; *Mattingly v. Anthony Industries, Inc.* (1980) 109 Cal.App.3d 506, 513 [167 Cal.Rptr. 292] ["[A]ny action for a patently deficient or defective design must have been brought within four years of the date of completion . . ."].)

It would seem illogical for the limitations period under section 337.1 to be postponed until the time of substantial completion and then to encompass claims for patent deficiencies that had been corrected in the meantime.[4] Yet Resco claims the Legislature intended exactly this result. Resco argues the timing furthers a public policy of allowing litigation among contractors to be deferred until after construction is complete, thereby avoiding the "fear or distrust" pending litigation could engender during the course of a project. However, Resco directs us to no legislative history in support of this creative policy rationale, nor have we found any mention of it in cases applying section 337.1. To the contrary, it appears the Legislature enacted section

---

[3]Resco glosses over this ambiguity by asserting that, since Nicholson-Brown was not the owner of the building, it would have had no reason to sue for patent deficiencies in the completed construction. This argument is a red herring. Presumably, Nicholson-Brown would have sued the architect for patently deficient designs regardless of whether defects resulting from these designs remained upon substantial completion.

[4]*Nicholson-Brown* implicitly recognized this inconsistency when it applied traditional accrual rules and set the limitations clock running from the date of Nicholson-Brown's injury, rather than the date of substantial completion. Because the contractor's cause of action "obviously accrued at some point between August and November 26, 1968"—i.e., during the period of experimentation with revised concrete mixes before work on the exterior finish was suspended entirely—the court reasoned section 337.1 gave Nicholson-Brown four years from that accrual date to file suit. (*Nicholson-Brown, supra*, 62 Cal.App.3d at p. 533.)

337.1 in 1967 in response to the construction industry's fear that it could face virtually unending liability due to the advent of discovery-based accrual rules for statutes of limitation. (Boyle & Hastings, *California Code of Civil Procedure Sections 337.1 and 337.15: Defective Construction Defect Statutes* (1990) 21 Pacific L.J. 235, 243-246, 264-265; see also *Nichols v. Swimquip* (1985) 171 Cal.App.3d 216, 220-221 [217 Cal.Rptr. 272] [statute promotes construction by freeing those in the industry from "the specter of lawsuits in the distant future"].) Thus, the purpose of section 337.1 was not to promote harmony among contractors during construction, but rather "to prevent 'uncertain liability extending indefinitely into the future.' (*Regents of University of California v. Hartford Acc. & Indem. Co.* [(1978)] 21 Cal.3d [624,] 633, fn. 2 [147 Cal.Rptr. 486, 581 P.2d 197] [(*Regents*)].)" (*Tomko Woll, supra*, 46 Cal.App.4th at p. 1336.)

In short, we agree with the holding in *Kralow* that section 337.1 does not apply to claims of injury based on patent deficiencies that no longer exist upon substantial completion of construction. (*Kralow, supra*, 168 Cal.App.3d at p. 1035; see also 3 Witkin, Cal. Procedure (4th ed. 1996) Actions, § 557, p. 710 ["[T]he purpose of C.C.P. 337.1 is to provide a cause of action for patent deficiencies *existing on substantial completion* of a project. Hence, the statute is not applicable to an action to recover damages for a delay in completion caused by patent deficiencies that have been corrected by the time of completion"].) Resco's claims against SHN and Gianelli therefore fall within the general two-year statute of limitations applicable to professional negligence claims. (§ 339, subd. 1.)

B. *Section 337.1 Does Not Extend the Applicable Limitations Period.*

Even if section 337.1 could be construed to encompass claims for patent deficiencies that are resolved by the time of substantial completion, we would still measure Resco's claims against the two-year limitations period in section 339, subdivision 1. Consistent with the body of case law developed under the companion statute for latent deficiencies (§ 337.15), we conclude that section 337.1 is but one prong of a two-pronged limitations scheme applicable to construction-related claims. Section 337.1 merely provides the *outer limit* of when one of its protected class may be sued for a patent defect: no later than four years after substantial completion of the project.[5] But it does not revive claims that are barred pursuant to other applicable statutes of limitation.

---

[5]Except that claims for injuries or death caused by a patent deficiency during the fourth year after substantial completion may be brought within one year after the date of such injury or death. (§ 337.1, subd. (b).)

In *Regents*, the California Supreme Court considered whether section 337.15, which bars latent defect actions 10 years after substantial completion, is an ordinary procedural statute of limitations or a substantive limit upon a plaintiff's cause of action.[6] Writing for the majority, Justice Tobriner explained that section 337.15 does not pose a substantive bar but operates in conjunction with other procedural statutes to create a two-step limitation on claims: "With judicial recognition that under some circumstances causes of action for negligence, product liability, or breach of warranty may not arise until discovery, the Legislature has responded by enacting statutes of limitation which require suit be filed within the shorter of two periods, one measured from the date of discovery and a second, longer period measured from the event giving rise to the cause of action.[7] Section 337.15, read together with Code of Civil Procedure sections 337 and 338, enacts such a two-step limitation: actions founded upon a latent defect in the development of real property must be filed within three or four years of discovery, depending on whether the action rests on breach of warranty or negligence, but in any case within ten years of the date of substantial completion of the improvement." (*Regents, supra*, 21 Cal.3d at pp. 640-641.)

■ Thus, when a party sues for injuries caused by a latent construction defect, the court first determines whether the claim was filed within the limitations period applicable to the claim, and then considers whether the claim was filed more than 10 years after substantial completion of the project. If the action is untimely pursuant to the "regular" statute of limitation (i.e., the statute that would apply regardless of a construction context), it is barred regardless of whether it was filed less than 10 years after substantial completion. (*North Coast Business Park v. Nielsen Construction Co.* (1993) 17 Cal.App.4th 22, 27 [21 Cal.Rptr.2d 104].) Likewise, if a latent

---

[6]The relevant portions of section 337.15 provide:

"(a) No action may be brought to recover damages from any person, or the surety of a person, who develops real property or performs or furnishes the design, specifications, surveying, planning, supervision, testing, or observation of construction or construction of an improvement to real property more than 10 years after the substantial completion of the development or improvement for any of the following:

"(1) Any latent deficiency in the design, specification, surveying, planning, supervision, or observation of construction or construction of an improvement to, or survey of, real property.

"(2) Injury to property, real or personal, arising out of any such latent deficiency.

"(b) As used in this section, 'latent deficiency' means a deficiency which is not apparent by reasonable inspection. [¶] . . . [¶]

"(d) Nothing in this section shall be construed as extending the period prescribed by the laws of this state for bringing any action."

[7]"See, e.g., Code of Civil Procedure section 340.5 (actions against health care providers); Code of Civil Procedure section 340.6 (actions against attorneys)."

defect action is filed more than 10 years after substantial completion, the action is barred by section 337.15 even though it only recently accrued and is timely pursuant to the applicable statute. (*Liptak v. Diane Apartments, Inc.* (1980) 109 Cal.App.3d 762, 769 [167 Cal.Rptr. 440].)

Section 337.1 is very similar to its companion, section 337.15, although they do not match up in every particular. (See *Grimmer v. Harbor Towers* (1982) 133 Cal.App.3d 88, 92-94 [183 Cal.Rptr. 634].) We have not found a case expressly holding that section 337.1 creates a two-step limitation like that in section 337.15, but several courts have stated in dicta that the two-step process described in *Regents* applies equally to both statutes. (E.g., *Nichols v. Swimquip*, *supra*, 171 Cal.App.3d at p. 220; *Baker v. Walker & Walker, Inc.* (1982) 133 Cal.App.3d 746, 755 [184 Cal.Rptr. 245]; *Mattingly v. Anthony Industries, Inc.*, *supra*, 109 Cal.App.3d at p. 513.) Commentators have also considered the *Regents* analysis equally applicable to section 337.1. (See Miller, Handling Construction Defect Claims: Western States (3d ed. 1999) § 8.02[B], p. 351 ["These statutes establish only maximum time limits and do not extend the limitations otherwise prescribed by law"]; cf. Boyle & Hastings, *California Code of Civil Procedure Sections 337.1 and 337.15: Defective Construction Defect Statutes, supra*, 21 Pacific L.J. at pp. 241-242 [arguing §§ 337.1 and 337.15 should be considered statutes of repose because both require filing within the shorter of two applicable time periods].)

In response, Resco contends a two-step analysis makes less sense in the context of patent defects because, by definition, these defects are apparent when construction is substantially complete. Given the discernable nature of patent defects, Resco argues, most claims would expire within four years after substantial completion regardless of section 337.1. But such speculation is easily disproved. For example, in *Tomko Woll*, the plaintiff sustained personal injuries more than five years after substantial completion due to a fall on visibly defective paving, an imperfection the court found to be a "patent deficiency" as a matter of law. (*Tomko Woll, supra*, 46 Cal.App.4th at pp. 1329, 1331, 1338.) The appellate court recognized that patent deficiencies may arise *after* substantial completion of construction, and it held section 337.1 applies to claims based on these late-appearing defects. (46 Cal.App.4th at p. 1336.) Section 337.1, subdivision (e) defines "patent deficiency" only as "a deficiency which is apparent by reasonable inspection"; it does not specify *when* the deficiency must become manifest. Resco's argument that all patent deficiencies in a project will be capable of discovery upon substantial completion therefore rests on a faulty assumption.

Our determination that section 337.1 creates a two-step limitation mirroring the analysis under section 337.15 is supported by the statutes' common purpose of providing some groups in the construction industry with finality, protecting them from extended liability, and promoting construction. (*Tomko Woll, supra*, 46 Cal.App.4th at pp. 1333-1334; *Sevilla v. Stearns-Roger, Inc.* (1980) 101 Cal.App.3d 608, 611 [161 Cal.Rptr. 700].) In addition, the legislative intent that sections 337.1 and 337.15 operate as outer limits on the time for bringing an action, and not as freestanding statutes of limitation, finds expression in the virtually identical provision in both statutes: "Nothing in this section shall be construed as extending the period prescribed by the laws of this state for the bringing of any action." (§ 337.1, subd. (c); see also § 337.15, subd. (d) ["Nothing in this section shall be construed as extending the period prescribed by the laws of this state for bringing any action"].) This language, which appears in no other statute of limitation, clearly indicates that these statutes cannot be used to revive causes of action that have expired under other operable statutes of limitation.[8] Thus, section 337.1, subdivision (c) expressly prohibits the argument Resco urges in this appeal.

## II. *Accrual of Appellant's Claims.*

■ Having concluded that section 339, subdivision 1, and not section 337.1, provides the limitations period applicable to Resco's claims, we now consider whether these claims were timely.

Respondents assert Resco's claims against them accrued no later than December 19, 1995, when Resco sent a letter to SHN claiming it had been "severely damaged" and stating its intention to pursue compensation from the County. Since Resco did not file suit against them until more than two years later (on Dec. 31, 1997), respondents argue the action is time-barred. Resco counters that its claim did not accrue until February 8, 1996, when the County refused to pay the expenses Resco incurred due to respondents' deficient work. Although Resco admittedly became aware of the deficiencies during the course of construction, Resco contends its injury from them remained "inherently speculative and uncertain" until the County refused to cover the additional expense.

■ A cause of action for professional negligence does not accrue until the plaintiff (1) sustains damage and (2) discovers, or should discover, the

---

[8] *Nicholson-Brown* distinguished subdivision (c) of section 337.1 as the Legislature's effort to make section 337.1 prospective only. (*Nicholson-Brown, supra*, 62 Cal.App.3d at p. 533.) We reject this somewhat tortured interpretation in favor of the statute's plain meaning.

negligence. (*Budd v. Nixen* (1971) 6 Cal.3d 195, 203 [98 Cal.Rptr. 849, 491 P.2d 433].) While "[t]he mere breach of a professional duty, causing only nominal damages, speculative harm, or the threat of future harm—not yet realized—does not suffice to create a cause of action for negligence," an action accrues, and the statute begins to run, as soon as the plaintiff suffers "appreciable harm" from the breach. (*Id.* at p. 200.) Situations in which the plaintiff discovers the negligence *before* he actually sustains damages are "unusual." (*Id.* at p. 201.) Examples include: (1) attorney malpractice, where it cannot be determined whether such errors actually cause the client harm until he suffers an adverse judgment (*id.* at p. 200-201; *Laird v. Blacker* (1992) 2 Cal.4th 606, 612 [7 Cal.Rptr.2d 550, 828 P.2d 691]); (2) accounting malpractice, where the client has no injury from errors in tax return preparation until the IRS assesses a tax deficiency (*International Engine Parts, Inc. v. Feddersen & Co.* (1995) 9 Cal.4th 606, 608, 620 [38 Cal.Rptr.2d 150, 888 P.2d 1279]); and (3) negligent property appraisal, where the lender does not suffer actual damage from an inflated appraisal value until it actually acquires the property. (*Slavin v. Trout, supra*, 18 Cal.App.4th at pp. 1542-1543.)

Resco strains to fit its claims against SHN and Gianelli into these delayed accrual precedents. Although Resco admits it discovered deficiencies in the work product of SHN and Gianelli during the course of construction, and incurred related costs all along as a result of the work necessary to correct them, Resco asserts its damages remained speculative until the County refused to pay for the cost overruns, pursuant to its agreement with Resco.

This argument fails because it "confuses the distinction between the *fact and knowledge* of damage and the *amount* of damage. (*Budd* [*v. Nixen*], *supra*, 6 Cal.3d at pp. 200-201.)" (*Laird v. Blacker, supra*, 2 Cal.4th at p. 615.) Our courts have long held that "it is uncertainty as to the fact of damage, rather than its amount, which negatives the existence of a cause of action." (*Walker v. Pacific Indemnity Co.* (1960) 183 Cal.App.2d 513, 517 [6 Cal.Rptr. 924].) Resco indisputably suffered out-of-pocket costs during construction due to the approximately 200 requests for information it claims were necessitated by respondents' deficient work. Whether the County would agree to reimburse Resco for some or all of these costs in the future did not change *the fact* that Resco had suffered losses directly attributable to respondents' negligence; it merely had the potential of altering *the amount* of that damage.

"[O]nce plaintiff has suffered actual and appreciable harm, neither the speculative nor uncertain character of damages nor the difficulty of proof

will toll the period of limitation." (*Davies v. Krasna* (1975) 14 Cal.3d 502, 514 [121 Cal.Rptr. 705, 535 P.2d 1161, 79 A.L.R.3d 807].) At the very latest, Resco knew by the time of substantial completion that it had suffered actual and appreciable harm, totaling over $1 million in costs, and knew that the harm resulted from respondents' negligence. Resco's cause of action against respondents accrued at that time, and the statute began to run. We reject the notion that accrual was somehow postponed, or the running of the statute tolled, for a potentially indefinite period of time after substantial completion while Resco pursued reimbursement from the County. Such a rule could leave subcontractors in the disadvantageous position of having to defend against claims that grew stale during extended negotiations among other parties. Moreover, even if Resco's contract with the County contemplated that Resco would defer bringing suit against subcontractors until after its claims against the County were resolved—an interpretation that is quite a stretch from the contract terms Resco has submitted in its request for judicial notice—a plaintiff cannot rely on a contract term to postpone accrual of its claims against defendants that were not even parties to the agreement. (See *FNB Mortgage Corp. v. Pacific General Group* (1999) 76 Cal.App.4th 1116, 1130-1131 [90 Cal.Rptr.2d 841] [defendant's tolling agreement with plaintiff did not extend the 10-year period it had under § 337.15 to file indemnity action].)[9]

Thus, we conclude Resco's causes of action for professional negligence accrued when Resco incurred significant expenses, i.e., actual and appreciable harm, due to SHN's and Gianelli's negligence. While the point at which a negligence action accrues during a construction project will sometimes be a question of fact, and thus not appropriately resolved on a motion for summary judgment, here the undisputed facts showed Resco realized shortly after substantial completion that it had incurred substantial net losses. On December 19, 1995, Resco told SHN it had been "severely damaged" by a variety of construction delays and errors. As such, Resco's claims against respondents accrued no later than December 19, 1995. As discussed, these

---

[9]Resco's out-of-state authority does not compel a different result. In *MBA Commercial Construction, Inc. v. Roy J. Hannaford Co., Inc.* (1991) 1991 Okla. 87 [818 P.2d 469], the Oklahoma Supreme Court determined the statute of limitations had not expired on contractors' claims against an architect. Although the contractors became aware of the architect's negligent acts during construction, the evidence showed they were compensated for all invoiced costs prior to the project's completion. (*Id.* at p. 474.) Thus, they did not suffer any damage until after the completion date. (*Ibid.*) While the court observed that the plaintiffs later pursued reimbursement from the prime contractor, it did not state that accrual of their negligence claims was postponed indefinitely while negotiations dragged on. (*Id.* at pp. 474-475.) Nor did the court articulate a delayed accrual rule for all architectural negligence claims. It simply concluded the evidentiary record before it did not support summary judgment. (*Id.* at p. 475.)

claims are governed by the two-year statute of limitations set forth in section 339, subdivision 1; therefore, since the limitations period expired on December 20, 1997, and since Resco did not file the action until December 31, 1997, Resco's claims are barred.

## DISPOSITION

The judgment of dismissal is affirmed. Respondents are to recover their costs of appeal.

McGuiness, P. J., and Corrigan, J., concurred.